Argued and submitted January 14, reversed and
remanded with instructions May 26,
reconsideration denied July 1,
petition for review denied July 28, 1981 (291 Or 368)

OREGON STATE BOARD
OF HIGHER EDUCATION,
*Appellant,*

*v.*

WASHINGTON COUNTY et al,
*Respondents.*

(No. 39-692, CA 18604)

629 P2d 373

Karen H. Green, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were James M. Brown, Attorney Genenal, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

N. Robert Shields, Hillsboro, argued the cause for respondents Washington County and Warren B. Barnes, Washington County Sheriff. With him on the brief were Gregory S. Hathaway, County Counsel, and John M. Junkin, Chief Assistant County Counsel, Hillsboro.

Eleanore S. Baxendale, Assistant City Attorney, Beaverton, waived appearance for respondent City of Beaverton.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

THORNTON, J., specially concurring opinion.

## RICHARDSON, P. J.

In this civil case, plaintiff, on behalf of the University of Oregon Health Sciences Center (OHSC), brought an action against Washington County (county), the Washington County Sheriff (sheriff) and the City of Beaverton (Beaverton) to recover the costs of medical treatment provided by OHSC to one Steven Bruce, arrested in Washington County by Beaverton police for violation of a state law and treated at OHSC prior to being lodged in the Washington County Jail. The trial court, on stipulated facts, found the city not responsible for any of the medical expenses,[1] and the county and sheriff responsible only for expenses incurred after the sheriff first took physical custody of Bruce on February 4, 1977. Plaintiff appeals. The issue is whether the county is statutorily liable for the reasonable and necessary medical expenses of a prisoner lodged, with the county's knowledge, in a detention facility at the hospital during his period of medical treatment and, upon release, taken by the sheriff to the county jail to await trial. We reverse.

The stipulated facts can be summarized as follows: On December 10, 1976, Steven Bruce and two companions attempted a robbery in Beaverton, Oregon. During the robbery, Bruce was shot in the hand. With the assistance of one of his companions, he went to St. Vincent's Hospital, where he was admitted for emergency treatment.

The victim of the robbery notified the Beaverton police. In addition, hospital personnel notified the Beaverton police of Bruce's admission and the nature of his injury. Officer Moore, a Beaverton police officer, went to the hospital to investigate. After advising Bruce of his *Miranda*[2] rights, the officer obtained an admission to the attempted robbery and arrested Bruce for violation of a state statute.

---

[1] Plaintiff does not appeal the trial court's ruling regarding the city of Beaverton. It concedes that there is no legal basis for the city's liability in this case.

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

After placing Bruce under arrest, Officer Moore requested his release for transport to the county jail. Because of Bruce's medical condition, the hospital refused to authorize a release. The hospital did authorize and arrange a transfer to OHSC, which had a detention facility. Thereafter, the officer transported Bruce to OHSC where he was placed in the detention facility.

Later that same day, Officer Moore completed a custody report, a copy of which was sent to the Washington County District Attorney's Office. Also later that day, an information of felony was filed in Washington County District Court accusing Bruce and his two companions of robbery. Warrants were immediately issued for the arrest of the three individuals. Bruce's companions were arrested the following day by Beaverton police and lodged in the county jail. Due to his physical condition, and his confinement in the detention facility at OHSC, Bruce was not picked up and transported to the county jail at that time.

On January 17, 1977, the Washington County Grand Jury indicted Bruce for robbery and burglary. On February 4, 1977, he was transported by a deputy sheriff to the county jail and then to court for a preliminary hearing. At that time, he was committed by the court to the custody of the county and returned by a deputy sheriff to the detention facility at OHSC. On February 18, 1977, Bruce was discharged from OHSC and immediately taken by a deputy sheriff to the county jail where he remained until the time of trial.

The parties stipulated that Bruce incurred reasonable and necessary medical expenses in the amount of $11,633.20 up to February 4, 1977. At trial, the county admitted its liability for any medical bills incurred by Bruce between February 4, and February 18, 1977.

Plaintiff contends that OHSC is entitled to payment from the county and sheriff for *all* medical bills incurred by Bruce for treatment at OHSC. Plaintiff relies on ORS 169.140 and 169.150, which provide:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in his custody, and shall supply them with wholesome food, fuel and necessary medical aid."

"The charges and expenses for safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall, unless otherwise provided by law, be paid out of the treasury of the county. The account of the keeper shall be first allowed by the county court or board of county commissioners of the county from which the prisoner was committed."

Plaintiff contends that these statutes make the county and sheriff responsible for medical treatment of any prisoner from the time of arrest for violation of a state law committed within the county. Defendants contend that their responsibility begins only after the prisoner is taken into the "actual custody" of the county, which they also contend did not occur until a deputy sheriff took physical custody of Bruce for transport to the county jail on February 4, 1977.

The application of these statutes has previously been discussed in *Sisters of Charity v. Washington Co.,* 244 Or 499, 419 P2d 36 (1966), and *Mercy Hospital v. Douglas Co.,* 28 Or App 557, 559 P2d 1286 (1977). In *Sisters of Charity,* one Priscilla critically wounded himself after killing another individual. State, county and city police officers arrived at the scene and Priscilla was taken to the plaintiff hospital for treatment. While hospitalized, the county sheriff posted a twenty-four hour-a-day guard outside Priscilla's room. After recovering from the gunshot wound, Priscilla was taken by a deputy sheriff to the county jail and charged with second degree murder.

The county denied all liability for Priscilla's medical expenses under ORS 169.140 and 169.150. The Supreme Court noted that the obvious purpose of the statutes was to assure needed medical services to persons imprisoned by the county and, therefore, that the statutes applied to any prisoner in county custody waiting trial. The county raised several objections to application of the statutes. First, it argued that Priscilla was not in "custody." In rejecting that argument, the court noted that the presence of a twenty-four hour-a-day guard outside Priscilla's door during his hospitalization constituted "custody." The court stated:

"* * * Defendant suggested that in so far as the stipulation indicates the guard could have been for his protection

rather than his custody. Defendant overlooks that the stipulation also provides that at the time of his release from the hospital the custody continued and he was lodged in the Washington County Jail and charged with second degree murder for which he was subsequently tried. The only reasonable inference to be drawn therefrom is that while he was in the hospital he was in custody as a prisoner because the sheriff wished to assure his attendance at trial. The stipulation shows no other facts from which a contrary inference could be drawn." 244 Or at 502.

Next, the county argued that the parties' stipulation did not indicate that the sheriff had anything to do with Priscilla's transportation to the hospital and admission as a patient. In response to that argument, the court noted:

"* * * Considering that the purpose of the statutes is necessary medical treatment for prisoners, it would not be good public policy to place a hospital in the position where reimbursement from the county for care to a critically wounded person is dependent on the county first having made arrangements with it for admission. As long as it is shown that the sheriff had custody for one of the enumerated statutory purposes during the time the critically injured individual was a patient, the statutory requirements are fulfilled." 244 Or at 502-03.

Finally, the county argued that its statutory liability existed only when the prisoner was committed to the county jail itself. The court disagreed:

"* * * Priscilla's critical condition did not permit his commitment to jail, the normal place of confinement, so the county maintained him in custody at the hospital. The sheriff is the jailer for the county, ORS 169.320. Under such circumstances it is not reasonable to assume that the legislature intended the statute to have no application merely because the jail was not the place of confinement." 244 Or at 503.

The court concluded that at the time the services were rendered by plaintiff hospital, Priscilla was in the custody of the county sheriff for the purpose of holding him to answer for the crime of murder and that the hospital, therefore, was entitled to reimbursement from the county under the provisions of the statutes.

In *Mercy Hospital,* one Fortney was shot by a Douglas County deputy sheriff while in the act of committing a burglary. He was taken by the deputy to plaintiff hospital where he remained for approximately 60 days with severe spinal injuries. On June 20, 1975, approximately 30 days after his admission, a magistrate came to Fortney's hospital room, arraigned him and released him on his own recognizance for transportation anywhere in the state for medical purposes. At the time of this release, Fortney was completely paralyzed. He never left the hospital at any time prior to his discharge. The county admitted liability for those medical expenses incurred before June 20, 1975, but denied any liability for services rendered after the prisoner's "release."

We noted that the statutory liability imposed by ORS 169.140 and 169.150 extended "to the cost of hospitalization where the circumstances imply that the prisoner is in the sheriff's custody, even though some of the procedural niceties of formal custody may not have been observed." 28 Or App at 560. We concluded that Fortney's "release" did not free the sheriff entirely from the responsibility for his care and appearance for trial and that the county was responsible for his medical services up to the time of his ultimate discharge.

These two decisions make the following points clear: (1) the fact that the arrest of the prisoner and admission for medical treatment was effected by a peace officer not employed by the county, does not, in and of itself, alter the county's liability under the statutes; (2) a hospital is a place of confinement within the meaning of the statutes when the prisoner is physically unable to be maintained in the county jail; (3) "custody," within the meaning of the statutes, exists whenever the prisoner is either placed under guard or where his physical condition makes it such that he could not leave the hospital of his own free will and, in either case, whenever the circumstances imply that the prisoner was so confined to assure his ultimate attendance at trial; and (4) that the statutes apply where the circumstances imply that the prisoner is in the sheriff's custody for one of the enumerated statutory purposes, notwithstanding the absence of indicia of "formal custody." Application of these guides to the facts of this

case illustrates the reason the county is liable for Bruce's necessary medical expenses during that period of time in which he was treated in the OHSC detention facility, even though he was not taken into the county's "actual custody" before February 4, 1977.

■ In the present case, Officer Moore arrested Bruce at the hospital. He intended to transport him immediately to the county jail. When he could not do so, he did not leave Bruce in an unguarded facility; he took him to OHSC and lodged him in the detention facility, the functional equivalent of the county jail. Officer Moore thereafter prepared his report, which he forwarded to the district attorney.

Based on the information gained from Officer Moore and other sources, criminal charges were filed against Bruce the day following his arrest. A warrant was issued at that time for his arrest and transport to the county jail. Bruce was not picked up due to his medical condition *and* because he was already confined, with the defendant's knowledge, in the detention facility at OHSC. Thereafter, Bruce was indicted for robbery and burglary. At a time when his medical condition allowed, he was transported by county personnel to the county jail. Eventually, upon his discharge from OHSC, he was immediately taken to the county jail, where he remained up to the time of his trial.

The only reasonable inference to be drawn from the stipulated facts is that while Bruce was hospitalized he was in custody as a prisoner of the county. The county did not take physical custody prior to February 4, 1977, because it did not need to do so, due to Bruce's physical condition and confinement status. The detention throughout his hospitalization assured his attendance at trial in exactly the same manner as if he had been lodged in the county jail or if the county had placed a guard at the hospital. As soon as he was physically able to leave OHSC, he was taken under county guard to the county jail. We conclude ORS 169.140 and 169.150 require the county to assume the responsibility for necessary medical care in such circumstances.

The judgment of the trial court is reversed with instructions to enter judgment for plaintiff as prayed for in plaintiff's complaint.

Reversed and remanded with instructions.

**THORNTON, J.,** specially concurring.

I concur in the result for the reasons stated in the majority opinion in *Rogue Valley Memorial Hosp. v. Jackson County,* decided this day.