Argued and submitted January 14, affirmed in part;
reversed in part; and remanded with instructions May 26,
reconsideration denied July 1,
petition for review denied July 28, 1981 (291 Or 368)

# ROGUE VALLEY MEMORIAL HOSPITAL,
## *Appellant,*

*v.*

## JACKSON COUNTY et al,
### *Respondents.*

## (No. 78-2666-L-2, CA 17815)

629 P2d 377

Karen C. Allan, Medford, argued the cause for appellant. With her on the brief was Foster & Purdy, Medford.

John L. DuBay, County Counsel, Medford, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

Richardson, P.J., concurring in part; dissenting in part.

## THORNTON, J.

This case again requires us to examine the circumstances in which ORS 169.140 and 169.150 obligate a county to assume responsibility for medical services provided to persons in need of medical treatment who are arrested for violation of state laws committed within the county. *See also Bd. of Higher Educ. v. Wash. Co.,* 52 Or App 369, 629 P2d 373 (1981). Plaintiff hospital brought this action against defendants Jackson County (county) and the Jackson County Sheriff (sheriff) to recover the cost of medical services provided for ten individuals between 1974 and 1977. The trial court, on stipulated facts, found defendants liable for the medical bills of three of the individuals but otherwise denied plaintiff's claim. Plaintiff appeals. We affirm in part and reverse in part.

The factual situations involving medical treatment of the seven individuals for which the court held the county was not liable are described in the parties' stipulation:

"Lula Lawrence was arrested on a charge of homicide on August 4, 1974 by the Medford Police Department. She was taken by Medford police officers to Plaintiff hospital at the direction of the Circuit Court Judge with the consent of her attorney and her treating psychiatrist. On August 11, 1974, she was transported from Plaintiff hospital by Medford police officers to the County Jail and there lodged. During her stay in the hospital, she was under guard of Medford police officers, except for a short time in surgery.

"Danny J. Arnegard was arrested by Medford city police officers on November 17, 1975. He was charged with attempted murder. At the time of his arrest, he was bleeding from a cut on his hand. He was taken by Medford city police officers to Plaintiff hospital for treatment of this injury. He was thereafter taken to Medford City Jail for 'processing procedures' and then taken to the Jackson County Jail where he was lodged at 6:42 a.m. on November 17, 1975.

"Clarence Snow was arrested by the Medford Police Department on a charge of possession of marijuana. He was taken to Medford Police headquarters where he complained that he had been injured during the arrest. He was taken to Plaintiff hospital, treated and then taken by Medford police officers to the County Jail where he was lodged.

"Barbara Eacret was arrested on November 27, 1977 on a charge of homicide by the Medford Police Department. She was taken to the Medford City Jail for 'preliminary matters' where she was questioned by the city police and the District Attorney. She conferred with a psychiatrist and her attorney at this time. She was taken to Plaintiff hospital where blood was withdrawn to determine the quantity of alcohol, if any, in her blood. This test was made for police investigative purposes and not for any purpose related to a medical condition of Mrs. Eacret or medical treatment for her. After the blood sample was withdrawn, she was taken by city police officers to the County Jail and lodged.

"Randy Riter shot his brother and barricaded himself in an apartment at approximately 6:00 p.m. on December 20, 1977 and proceeded to resist requests from the Medford City Police Department to surrender himself. Tear gas was used. During the late night hours of December 20 or early morning hours of December 21st, he exchanged gunfire with the police and was critically injured. He was taken by Medford police officers to Plaintiff hospital where he remained from December 21, 1977 to January 13, 1978. Except for a period of time when he was in a comatose state, he was at all times guarded by police officers of the City of Medford except for a period of approximately five hours on January 9, 1978. After this five-hour period and at the request of Plaintiff hospital, guards were again assigned to Riter and he continued to be under guard until January 13, 1978, at which time he was taken by Medford police officers to the Jackson County Jail and lodged therein.

"Henry D. Adams was arrested on October 27, 1975 by the Oregon State Police on charges of assault, open container in vehicle, attempting to elude and resisting arrest. He had a scrape on his forehead at the time of arrest and he was taken to Plaintiff hospital by the arresting officer, treated and then transported to the Jackson County Jail, all on the same date and within a matter of 2 to 3 hours.

"Curtis Crisel was arrested by the Oregon State Police on December 14, 1974 and charged with driving under the influence of intoxicating liquor. He was taken to Plaintiff hospital by the arresting officer for treatment of a minor injury and then taken to the County Jail where he was lodged."[1]

---

[1] The expenses incurred by each individual were:

The parties further stipulated that plaintiff's services were necessary and the charges reasonable; that the county jail was the only local correction facility within the county; that all peace officers in the area brought their prisoners to the county jail; and that at all material times the county jail had a standard operating procedure which required that prisoners brought to the jail by arresting officers other than deputy sheriffs would not be accepted for lodging in the county jail until they had already received needed medical treatment.

ORS 169.140 and 169.150 provide:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in his custody, and shall supply them with wholesome food, fuel and necessary medical aid."

"The charges and expenses for safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall unless otherwise provided by law, be paid out of the treasury of the county. The account of the keeper shall be first allowed by the county court or board of county commissioners of the county from which the person was committed."

In *Bd of Higher Educ. v. Wash. Co., supra,* decided this date, we examined *Sisters of Charity v. Washington Co.,* 244 Or 499, 419 P2d 36 (1966), and *Mercy Hospital v. Douglas Co.,* 28 Or App 557, 559 P2d 1286 (1977) the two previous cases construing these statutes. We noted:

"These two decisions make the following points clear: (1) the fact that the arrest of the prisoner and admission for medical treatment was effected by a peace officer not employed by the county, does not, in and of itself, alter the county's liability under the statutes; (2) a hospital is a place of confinement within the meaning of the statutes

| | |
|---|---|
| Lula Lawrence | $ 639.05 |
| Danny Arnegard | 49.60 |
| Clarence Snow | 73.25 |
| Barbara Eacret | 6.95 |
| Randy Riter | 7,809.85 |
| Curtis Crisel | 21.50 |
| Henry Adams | 59.65 |

where the prisoner is physically unable to be maintained in the county jail; (3) 'custody,' within the meaning of the statutes, exists whenever the prisoner is either placed under guard or where his physical condition makes it such that he could not leave the hospital of his own free will and, in either case, whenever the circumstances imply that the prisoner was so confined to assure his ultimate attendance at trial; and (4) that the statutes apply where the circumstances imply that the prisoner is in the sheriff's custody for one of the enumerated statutory purposes notwithstanding the absence of indicia of 'formal custody.' * * *" (52 Or App at 369.)

We again use these guides to determine the applicability of the statutes to the fact situations in question in this case.

Defendants contend that their responsibility begins only after a prisoner is taken into the "actual custody" of the county, i.e., is either arrested by county personnel, physically transferred to the county's custody prior to the time the need for medical treatment arises or taken into custody at some point during hospitalization by the county sheriff. Plaintiff, on the other hand, argues that defendants' obligation arises whenever a person is arrested for violation of a state law committed within the county and is subsequently lodged in the county jail, regardless of who the arresting agency was or when the need for medical treatment arose. The trial court adopted defendants' position and imposed liability only for the expenses incurred by Anderson, Jordan and McKinney, all of whom were in the process of formal booking at the county jail when their need for treatment was discovered.[2]

We turn then to the factual situations in issue here to determine whether, in each individual instance, the county is liable for the person's medical care under ORS 169.140 and 169.150.

*Barbara Eacret*

The parties' stipulation indicates that Barbara Eacret's expenses related to *police investigation* and not to any *purpose related to* her medical condition or medical treatment. ORS 169.140 and 169.150 apply only when

---

[2] Defendant does not appeal the trial court's order in this respect.

prisoners in county custody receive *needed medical treatment. Sisters of Charity v. Washington Co., supra,* 244 Or at 502-03. The statutes do not apply to expenses incurred by police agencies for investigative purposes. The court did not err in denying plaintiff recovery against defendants for these expenses under ORS 169.140 and 169.150.

*Lula Lawrence and Randy Riter*

■        These two prisoners required extended medical care and hospitalization. While hospitalized, both were guarded by city police. Upon discharge, both were taken under police guard to the county jail. Thus, the situation here is similar to the one before the Supreme Court in *Sisters of Charity v. Washington Co., supra.* The only significant difference is that in that case, unlike here, the guards were provided by the county sheriff rather than city police. However, in both instances, the prisoner was immediately taken under guard to the county jail upon discharge.

ORS 169.140 and 169.150 apply under these circumstances. The fact that the guards were maintained by city police in this case rather than the sheriff's department does not alter the county's responsibilities under the statutes. The sheriff did not guard the prisoners because there was no need to do so; they were already under guard by city police. The city police were, therefore, performing the county sheriff's role of detaining the prisoners. In this respect, this case presents a situation very similar to that in *Bd. of Higher Educ. v. Wash. Co., supra.* There, the county also did not post a guard over the prisoner because the prisoner was placed in the hospital's detention facility. We concluded in that case that the detention facility constituted the functional equivalent of the county jail under the circumstances. The same conclusion results from the circumstances here. The prisoners were in custody. In light of their immediate incarceration on discharge, the only reasonable inference to be drawn from the circumstances is that they were confined during their hospitalization in exactly the same manner as if they had been lodged in the county jail during their treatment or if the county had posted the guard at the hospital. *Sisters of Charity v. Washington Co., supra; Bd of Higher Educ. v. Wash. Co., supra.* They were confined to assure their attendance at

trial. The county is therefore required to assume the responsibility for their necessary medical care. The trial court erred in denying plaintiff recovery for expenses incurred as a result of plaintiff's treatment of these two individuals.

### Danny Arnegard, Clarence Snow, Henry Adams and Curtis Crisel

■ These four individuals were all arrested either by city or state police for violation of a state law committed within the county. All four had medical needs which were discovered before transfer to the county, and all were treated at plaintiff hospital on an outpatient basis and taken, upon discharge, by the arresting officer to the county jail. We conclude that the trial court erred in denying plaintiff recovery against defendants for expenses incurred by these individuals. The county's responsibility does not depend upon the existence of formal physical custody in a correctional facility. *Mercy Hospital v. Douglas County, supra.* The statutes impose liability in those instances where *indicia* of custody are present, i.e., where there is some basis to conclude that at the time of the prisoner's medical treatment, the prisoner's detention was sufficiently similar to actual county custody to require the county to bear the cost of their medical care.

■ ORS 169.150 plainly provides that:

"The charges and expenses for safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall unless otherwise provided by law, be paid out of the treasury of the county. * * *"

We interpret the above provision to mean that so long as the offender is arrested for a violation of state law, and in due course is ultimately delivered to the local correctional facility for confinement and trial, the medical and other incidental expenses (but not investigative expenses) incurred as a consequence of and following his arrest, and until his transfer to that facility, are chargeable to the county under ORS 169.150. The trial court erred in denying plaintiff recovery for the expenses related to the treatment of these four individuals.

In *Washington Township Hospital Dist. v. County of Alameda,* 263 Cal App 2d 272, 69 Cal Rptr 442 (1968), and *St. Mary of Nazareth Hospital v. City of Chicago,* 29 Ill App 3d 511, 311 NE 2d 142 (1975), the appellate courts of both Illinois and California, in construing parallel statutes of those states, concluded that the respective counties were liable, even though the injured person was brought to a hospital by city police before he was transferred to the county jail.

■ ■ We reject as narrow and illogical the dissent's construction that there must be some type of county custody or restraint at the hospital before the county becomes liable for the medical expenses incurred. We perceive no logical reason why the county's liability should depend on which police agency happens to be called to the scene of the alleged crime, or whether the injured person was hospitalized before or after he was placed in the county jail. This is contrary to the underlying rationale of *Sisters of Charity, supra,* which was expressed in these terms:

> "Under such circumstances it is not reasonable to assume that the legislature intended the statute to have no application merely because the jail was not the place of confinement." 244 Or at 573.

A statute should be construed, if possible, so as to avoid an absurd or unreasonable result. *James v. Carnation Co.,* 278 Or 65, 73-78, 562 P2d 1192 (1977).

The judgment is reversed with respect to liability for medical treatment received by Lula Lawrence, Randy Riter, Danny Arnegard, Clarence Snow, Henry Adams and Curtis Crisel. It is affirmed as to liability for the test administered to Barbara Eacret. We remand for entry of a judgment consistent with this opinion.

Affirmed in part; reversed in part; and remanded with instructions.

**RICHARDSON, P. J.,** concurring in part; dissenting in part.

I agree with the majority's conclusion that the county is not liable under ORS 169.140 and 169.150 for the medical expenses incurred by Barbara Eacret. I also agree with the majority that the county is liable under the

statutes for expenses incurred by Lula Lawrence and Randy Riter. Accordingly, I concur in those portions of the majority opinion. I disagree, however, with the conclusion reached by the majority with regard to the county's liability for the expenses incurred by Danny Arnegard, Clarence Snow, Henry Adams and Curtis Crisel. Therefore, I respectfully dissent.

As the majority notes, these four individuals were arrested by non-county law enforcement personnel for violations of state law committed within the county. Their needs for medical treatment were discovered before they were transported to the county jail. All were taken directly to plaintiff hospital, treated as outpatients, and thereafter taken to the county jail.

The basis for the county's responsibility under the statutes is correctly stated by the majority:

"* * * The county's responsibility does not depend upon the existence of formal physical custody in a correctional facility. *Mercy Hospital v. Douglas County, supra.* The statutes impose liability in those instances where *indicia* of custody are present, i.e., where there is some basis to conclude that at the time of the prisoner's medical treatment, the prisoner's detention was sufficiently similar to actual county custody to require the county to bear the cost of their medical care." 52 Or App at 364. (Emphasis in original.)

Having stated the correct basis of the county's liability, the majority erroneously, I believe, concludes that the county is liable for medical treatment of prisoners following arrest "so long as the offender is arrested for a violation of state law, and in due course is ultimately delivered to the local correctional facility for confinement and trial * * *." 52 Or App at 364.

The majority's conclusion does not accord with its test. Clearly, at the time medical treatment was provided these individuals, they were not in actual county custody. The question then is whether at the time they received medical treatment, the circumstances were sufficiently similar to county custody to require the county to pay for their treatment. I conclude they were not.

It is significant to note that in no prior case cited by the majority has a county been held responsible for medical

expenses incurred by persons who, on the way to being lodged in the county jail, are treated on an outpatient basis for minor injuries. To the contrary, the cited authorities reveal that, absent actual county custody, liability has been imposed only when the hospital, in addition to providing medical care, has also served as a custodial facility. *Sisters of Charity v. Washington County,* 244 Or 499, 419 P2d 36 (1966); *Bd of Higher Educ. v. Wash. Co.,* 52 Or App 369, 629 P2d 373 (1981); *Mercy Hospital v. Douglas County,* 28 Or App 557, 559 P2d 1286 (1977).

Based on the above authorities, I conclude that in order for the county to be held liable for medical expenses incurred by a prisoner, absent actual custody in the correctional facility, the circumstances must indicate that at the time treatment is rendered the hospital is serving not only as a medical facility but, in addition, a custodial facility. Thus, at the time treatment is rendered the prisoner's liberty must be restrained in essentially the same manner as if he was lodged in the county jail for one of the purposes specified in ORS 169.150. Such circumstances are sufficiently similar to actual county custody. The hospital becomes a place of commitment and custody, an extension of the county jail. It is fair to hold the county liable under ORS 169.140 and 169.150 for medical expenses incurred in such circumstances.

The four individuals in this case were treated on an outpatient basis. None of the prisoners, at the time of treatment, were "in custody" in the hospital. The hospital provided only medical services, but did not serve as a custodial facility. I would hold that the county's liability does not arise absent such a custodial relationship between the hospital, the prisoner and the county. In my view, the arrest by an arresting agency other than the county sheriff of an individual who is taken subsequent to arrest for outpatient treatment and later lodged in the county jail does not constitute sufficient custody as to require the county to assume financial responsibility for the arrestee's care. Therefore, I would conclude that the trial court did not err in denying plaintiff recovery for the expenses related to the treatment of these four individuals. Accordingly, I respectfully dissent from that portion of the majority opinion.