STATE OF OREGON,
acting by and through the
DIRECTOR OF VETERANS' AFFAIRS,
*Respondent,*

*v.*

McPHERSON,
*Appellant.*

(No. 8410, CA A22451)

651 P2d 175

Ralph C. Spooner, Salem, argued the cause and filed the briefs for appellant. With him on the briefs was Williams & Spooner, Salem.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this action to foreclose a mortgage given as security for a farm loan made to defendant by the Department of Veterans' Affairs (DVA). Its complaint alleged that defendant had defaulted by failing to occupy the mortgaged property as his home. A judgment of foreclosure was entered in favor of plaintiff. Defendant appeals. We affirm.

Defendant's five assignments of error raise three questions: 1) Whether plaintiff was entitled to bring a suit to foreclose its mortgage based on the claim that defendant had failed to make the mortgaged property his home; 2) whether the evidence established that defendant had not, in fact, made his home on the mortgaged property; and 3) whether foreclosure is the proper remedy when defendant's payments were current and the alleged default did not impair plaintiff's security.

In December, 1978, defendant and three partners purchased farm property in Wallowa County by land sale contract. In April, 1979, defendant applied for a farm loan from the DVA. On August 8, 1979, the property was deeded to defendant and his partners, and on August 22, defendant obtained his partners' interests. On August 28, he executed the mortgage to secure the loan of $162,700 from DVA. During the ensuing year, defendant, by his testimony, spent approximately 30 percent of his time on the farm and approximately 60 percent of his time in Dallas, where his mother and two daughters resided.

On August 25, 1980, plaintiff commenced this action to foreclose the mortgage, alleging that defendant "has failed to occupy the mortgaged property as his principal home" and, therefore, was in default. Defendant moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court denied defendant's motion and, after trial, entered a judgment of foreclosure on September 15, 1981.

■ On the first question presented on appeal, defendant first contends that a rule promulgated by the Director of the Veterans' Affairs that requires that defendant establish a home on the mortgaged property is not a part of the mortgage agreement. The mortgage provides:

"It is distinctly understood and agreed that this note and mortgage are subject to the provisions of Article XI-A of the Oregon Constitution, ORS 407.010 to 407.210, and any subsequent amendments thereto and to all rules and regulations which have been issued or may hereafter be issued by the Director of Veterans' Affairs pursuant to the provisions of ORS 407.020."

One of the rules incorporated by this reference into the mortgage is OAR 274-20-340(5), which provides:

"The veteran shall make his home on the security."

This rule was in effect at the time the loan was made. Although it would make no difference in the outcome, defendant was, in fact, aware of the requirement.[1] It was a part of the mortgage agreement when defendant obtained the loan.

▮ Defendant next argues that he was not bound by the requirement, because the Director of Veterans' Affairs had no authority to promulgate OAR 274-20-340(5). He contends that the rule is inconsistent with Article XI-A, Section 1, of the Oregon Constitution and with ORS 407.043.

Article XI-A, Section 1, provides, in part:

"* * * The credit of the state of Oregon may be loaned and indebtedness incurred * * * for the purpose of creating a fund, to be known as the Oregon War Veterans' Fund to be advanced for the acquisition of *farms and homes* for the benefit of male and female residents of the state of Oregon who served in the armed forces of the United States. * * *" (Emphasis supplied.)

Defendant contends that the constitution does not require veterans who receive DVA farm loans to live on the mortgaged property, nor does it otherwise restrict the meaning of "farm." He contends that ORS 407.043, which restricts the making of farm loans, actually applies a definition of "farm use" to exclude establishment of a residence on farm property. ORS 407.043 specifically provides:

---

[1] As a condition for obtaining the loan, defendant was required by the DVA to provide the following letter dated June 28, 1979:

"This is to state that I intend to set up permanent residency on the Wallowa ranch and to give my full attention to the property."

"An applicant who receives a loan under ORS 407.010 to 407.210 for the acquisition of a farm shall use the property acquired exclusively for farm use as defined in ORS 215.203(2)."

ORS 215.203(2)(a) provides:

"As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for human use and animal use and disposal by marketing or otherwise. It does not include the use of land subject to the provisions of ORS chapter 321, except land used exclusively for growing cultured Christmas trees as defined in subsection (3) of this section."

Under defendant's interpretation of ORS 407.043 and ORS 215.203(2)(a), a veteran applying for a DVA farm loan is not permitted to live on his property, because he is required to use the property exclusively for farming. We are not persuaded that that construction is reasonable, and we find a contrary legislative intent evidenced in the legislative history.

The Attorney General examined the legislative history of Article XI-A three years after it was adopted by the people. His opinion quotes from the argument in favor of the amendment, which was published in the official voters' pamphlet for the 1944 general election, as follows:

"Many will not return, but thousands of those who do will greatly need all that can be done for them by the people of Oregon to help them in their readjustment and to aid them in becoming home-owning citizens of Oregon." 23 Op Att'y Gen 348, 349 (Or 1947).

From this, the opinion concluded that the purpose of the amendment was to help veterans become home owners and that, within the meaning of Article XI-A, a farm is "a parcel of land capable of being devoted to agriculture * * * and having a home thereon * * *." A more recent opinion affirmed that conclusion as follows:

"The reasoning of that opinion was based upon a finding that the purpose of art XI-A was to aid veterans in becoming 'home-owning' citizens. 'Home' is defined in ORS 407.010(2)(3) for purposes of ORS 407.010 to 407.210 as a residential structure 'established, maintained, and used primarily as a principal place of residence by the veteran.' 'Home-owning' was expressly seen as the goal. The provision for providing loans for farms might be seen as an aid in setting the returning veteran up in business, but such an interpretation should be rejected since nonfarming veterans were not aided in establishing businesses. The loan for the farm was instead seen as a necessity for these veterans who wished to establish their home in the country." 38 Op Att'y Gen 1108, 1113 (Or 1977).

We agree that the purpose of Article XI-A was to aid veterans in purchasing homes, whether in cities or in rural areas. Because ORS 407.043 must be construed consistently with that purpose to avoid an absurd or unreasonable result, *Rogue Valley Memorial Hospital v. Jackson County*, 52 Or App 357, 629 P2d 377, *rev den* 291 Or 368 (1981), we conclude that the statute was not intended to prohibit veterans from living on their farms, as defendant contends.

■ Having determined that OAR 274-20-340(5) does not conflict with the Oregon Constitution or state laws, we next must determine whether the Director of Veteran's Affairs exceeded his authority in promulgating the rule. ORS 407.020 gives the Director broad administrative powers; it provides:

"The director shall administer the provisions of ORS 407.030, 407.040, 407.070 and 407.120 to 407.210. He may adopt and promulgate all necessary rules and regulations not inconsistent with those sections to carry into effect their provisions. * * *"

ORS 407.030(1) authorizes the director to advance funds to qualified veterans for home and farm loans. Subsection 2 provides:

"Subject to the limitations otherwise provided for in ORS 407.020, 407.030, 407.040, 407.058, 407.070 and 407.120 to 407.210, the [Advisory Committee to the Director of Veterans' Affairs] shall establish and declare the *policy of the state* to be followed in the administration of those sections." (Emphasis supplied.)

From these provisions it is clear that the legislature gave the Director of Veterans' Affairs broad authority to establish policy in connection with veterans' loans. We conclude that authority to make rules requiring that loans be made only on farms used as homes is within that discretion and is wholly consistent with Article XI-A of the constitution and ORS 407.043. The trial court, therefore, did not err in rejecting defendant's claim that the Director had no authority to require defendant to make the property his home.

■ The next question presented is whether the trial court erred in concluding that defendant had failed to make his home on the security. Our review is *de novo. Holm v. Epping,* 274 Or 613, 618, 547 P2d 600 (1976). By a clear preponderance of the evidence, we find that defendant failed to make his home on the property securing the loan. His own testimony was that he spent only 30 percent of his time on the farm and was in Dallas "as much as I possibly can," over 60 percent of the time.

■ Defendant's final contention is that equitable principles should prevent foreclosure when there was only a technical default and plaintiff's security was not impaired. In light of the policy behind granting of DVA loans, the failure to establish a home on the property used as security is not a technical default and is a proper basis for foreclosure.

Affirmed.