**JOSTENS, INC., Respondent,**

v.

**CNA INSURANCE, CONTINENTAL CASUALTY COMPANY, Appellant.**

No. CX–82–1032.

Supreme Court of Minnesota.

July 22, 1983.

---

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and J. Richard Bland, Minneapolis, for appellant.

Stapleton, Nolan & McCall and Mark M. Nolan, St. Paul, for respondent.

SIMONETT, Justice.

By an order without written opinion dated June 8, 1981, this court affirmed an order of the Ramsey County District Court wherein, among other things, CNA Insurance/Continental Casualty Company (CNA) was held to have a duty to defend its insured, Jostens, Inc., in a class action sex discrimination lawsuit (the *Nagy* action) and was ordered to reimburse Jostens for reasonable attorney fees incurred in that defense "from time to time on the basis of billings to Jostens from its retained counsel." In our order of June 8, 1981, we stated, "This affirmance does not preclude the consideration of any issues not decided by Judge Segell's Order of July 31, 1980, on any subsequent appeal."

Appellant CNA now takes this appeal from an order and an amended order of the Ramsey County District Court directing CNA to pay respondent Jostens, Inc., the sum of $286,704, the sum which represents billings that Jostens has paid up until November 1, 1981, to the Oppenheimer firm, its defense counsel in the *Nagy* action. In

this appeal CNA does not contend that the Oppenheimer fees are excessive but rather claims that attorney fees should have been shared by Jostens and that interest on these fees was improperly assessed.

1. The first issue is whether the attorney fees should have been apportioned. The *Nagy* action involves current employees, terminated employees and job applicants over a time space of approximately 6 years, while CNA's policy was in effect for only 4 of the 6 years. Further, plaintiffs in the *Nagy* action seek recovery on theories including intentional discrimination, which would not be covered by CNA's policy and, in part, ask for injunctive relief, which also would not be covered by the policy. Appellant CNA concedes that its policy does afford coverage for unintentional sex discrimination, but asserts that in litigation such as this involving multiple occurrences to class members, the defense costs should be apportioned. We disagree.

"If any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend." *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 75, 240 N.W.2d 310, 312 (1976). Here, whether some of the class action claims will be outside of policy coverage or outside the policy period is, at least at this stage of the litigation, not "free from doubt." *Crum v. Anchor Casualty Co.,* 264 Minn. 378, 390, 119 N.W.2d 703, 711 (1963). Much depends on whether the alleged unlawful practices, which would constitute a covered "occurrence" under the policy, were intentional or unintentional, a point still at issue. We hold, therefore, that Jostens is not required to share any portion of the Oppenheimer bill and that the entire bill is CNA's responsibility.

2. The trial court first ordered CNA to pay 8% interest from November 1, 1981, the date after which the amount of attorney fees owed became known to CNA. Later, the trial court amended its order to require CNA to pay interest from the dates payments were made by Jostens to the Oppenheimer firm. CNA objects to either award of interest.

Prejudgment interest is appropriate where the demand, though unliquidated, is ascertainable by computation or reference to generally recognized standards and does not depend on a contingency. *Lacey v. Duluth, Missabe & Iron Range Railway Co.,* 236 Minn. 104, 107–08, 51 N.W.2d 831, 834 (1952). Jostens' demand for payment of the Oppenheimer billings meets this test. As to when interest begins, we listed two factors in *Potter v. Hartzell Propeller, Inc.,* 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971), which should be considered, namely: (1) that plaintiff actually suffers loss of the use of its money from the date of the wrongful act; and (2) "one who cannot ascertain the amount of damages for which he might be held liable cannot be expected to tender payment and thereby stop the running of interest."

Here, CNA could not be expected to ascertain the amount of attorney fees owed at least until Jostens tendered to CNA the Oppenheimer bills, and this occurred a considerable time after Jostens had paid Oppenheimer. It seems fair only to permit interest once the bills for attorney fees are made available to CNA, and thus are "readily ascertainable." *See Polaris Industries v. Plastics, Inc.,* 299 N.W.2d 414 (Minn.1980).

Imposing interest from November 1, 1981, the date CNA was first able to review the bills, is in accord with the trial court's first order dated April 7, 1982, which order should be reinstated. The June 15, 1982, order is vacated.

Affirmed in part and reversed in part.

COYNE, J., took no part in the consideration or decision of this case.