L.P. MEDICAL SPECIALISTS, LTD., and Ely-Bloomenson Community Hospital and Nursing Home, East Range Clinics, Ltd., and Virginia Regional Medical Center, Respondents,

v.

ST. LOUIS COUNTY, Appellant,

and

The CITY OF ELY, Defendant and Third Party Plaintiff, Respondent,

v.

ST. LOUIS COUNTY, Third Party Defendant, Appellant,

Robert Leisz, and Michael Filippi, Third Party Defendants.

No. C2-85-1122.

Court of Appeals of Minnesota.

Dec. 10, 1985.

Review Denied Jan. 31, 1986.

David T. Stall, Virginia, for L.P. Medical Specialists and Ely-Bloomenson Community Hospital and Nursing Home.

Kenneth D. Butler, Duluth, for East Range Clinics, Ltd.

Fabian C. Danich, Chisholm, for Virginia Regional Medical Center.

Alan L. Mitchell, St. Louis Co. Atty., Duluth, for St. Louis County.

William E. Defenbaugh, Jr., Ely, for The City of Ely.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

L.P. Medical Specialists, Ltd., East Range Clinics, Ltd., Ely-Bloomenson Community Hospital and Nursing Home, and Virginia Regional Medical Center (Virginia Regional) brought this action against St. Louis County and the City of Ely to recover the costs of medical care which they provided to Robert Leisz and Michael Filippi. Leisz and Filippi, in the course of committing a burglary, were injured by City of Ely police officers. The trial court awarded judgment against St. Louis County and in favor of the medical care providers as follows:

| | |
|---|---|
| L.P. Medical Specialists | $518.00 |
| East Range Clinics | $3,122.80 |
| Ely-Bloomenson Hospital | $1,932.61 |
| Virginia Regional Medical Center | $10,663.65 |

The trial court also awarded judgment against St. Louis County and in favor of the City of Ely for the costs of guard services in the amount of $4,945.90. St. Louis County appeals. Virginia Regional seeks review of the trial court's denial of prejudgment interest. We affirm in part, reverse in part and remand.

## FACTS

The parties submitted this case to the trial court on stipulated facts, which we summarize as follows:

On January 28, 1981, at approximately 11:45 p.m., Ely police officers responded to a call informing them that there was a burglary in progress at a local drug store. The Ely police officers immediately called the St. Louis County Sheriff's Department and requested back-up support. At the scene of the burglary, two Ely police officers exchanged gunshots with the two suspects. Both suspects, later identified as Robert Leisz and Michael Filippi, were injured. At the request of the Ely police officers, an ambulance operated by the Ely-Bloomenson Hospital was dispatched to the scene. Officers of the St. Louis County Sheriff's Department arrived at the scene after the ambulance crew.

The ambulance crew transported the two suspects to the Ely-Bloomenson Hospital. Due to the severity of their injuries, Leisz and Filippi were transferred to the Virginia

Regional Medical Center early in the morning on January 29, 1981. While at the Virginia Regional Medical Center, L.P. Medical Specialists provided Leisz with medical services and the East Range Clinics provided Filippi with medical services. Subsequently, Leisz was transferred to St. Luke's Hospital in Duluth and remained there until February 16, 1981. Filippi remained at the Virginia Regional Medical Center until February 16, 1981.

Immediately after the shooting, the Ely Police Department contacted an Assistant St. Louis County Attorney, who advised that an independent agency should investigate the matter. He suggested that either St. Louis County or the state should do the investigation. In light of this suggestion, the Ely Police Department asked the St. Louis County Sheriff's Department to handle the investigation. The sheriff's department agreed to do so. As part of the investigation, the St. Louis County investigators went to the Ely-Bloomenson Hospital and the Virginia Regional Medical Center to collect clothing, fingerprints and other physical evidence taken from Leisz and Filippi. No one from the St. Louis County Sheriff's Department ever requested any medical assistance for either suspect.

On February 2, 1981, the St. Louis County Sheriff's Department served Filippi with a detention order and a complaint charging him with a violation of a state criminal statute. On February 3, 1981, it served Leisz with a similar detention order and complaint. Filippi made his first court appearance on February 12, 1981, and Leisz made his first court appearance on February 17, 1981. Both Filippi and Leisz were booked in the St. Louis County Jail on February 16, 1981.

Filippi and Leisz were under surveillance while they were hospitalized. During a conversation between the Ely Police Department and an Assistant St. Louis County Attorney, the latter indicated that guards should be posted at the hospitals, but he did not authorize or suggest a method for surveillance.

The Ely Police Department asked the St. Louis County Sheriff's Department to provide the guard service. The St. Louis County Sheriff's Department denied the request on the basis that it was not their responsibility. The City of Ely hired private individuals to guard the suspects until they were transferred to the St. Louis County Jail.

The St. Louis County Sheriff does not usually hold felony suspects who are arrested by other jurisdictions until the court orders that they be placed in jail. The sheriff department does hold its own prisoners prior to arraignment and the sheriff has contractual arrangements with some local communities to hold their prisoners. These communities reimburse the sheriff on a per diem basis and they pay for all necessary expenses.

Several communities in the northern portion of St. Louis County have their own local jails. Prisoners in these areas are held in the local jails prior to arraignment by the arresting jurisdictions or on behalf of the arresting jurisdictions pursuant to oral agreements. Cities in the northern portion of the county that do not have jails pay per diem rates and all necessary expenses to the holding jurisdictions until the prisoners make their first appearances in court.

Based on these stipulated facts, the trial court concluded that, from the time of their arrest, Leisz and Filippi were suspected of violating state law and that the county prosecuted the state felony charges pending against them. The trial court further determined that at all times Leisz and Filippi were prisoners of St. Louis County and, hence, that St. Louis County was obligated to provide Leisz and Filippi with necessary medical care and treatment. The trial court further concluded that St. Louis County wrongfully refused to provide security services while Leisz and Filippi were hospitalized and it ordered St. Louis County to pay the City of Ely for the costs of the security services.

The trial court denied St. Louis County's motion for amended findings and conclu-

sions. The trial court also denied the medical care providers' motion seeking prejudgment interest.

## ISSUES

1. Did the trial court properly determine that appellant St. Louis County is responsible for paying the medical expenses incurred by Leisz and Filippi and the costs of the security services incurred by respondent City of Ely?

2. Did the trial court err in denying respondent Virginia Regional's request for prejudgment interest?

## ANALYSIS

### I.

St. Louis County asserts that it is not responsible for medical expenses incurred prior to February 16, 1981, when Leisz and Filippi were transferred to the county jail.

The due process clause requires the responsible governmental agency to provide medical care to persons who are injured while police are apprehending them. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). It is left to state law to dictate how the cost of that medical care is allocated between the governmental entity and the provider. *Id.*

Statutory law requires that a county provide medical aid for its prisoners. Minn.Stat. § 641.15 (1980). Section 641.15 does not require that county prisoners be in county jails to receive medical aid. Likewise, implicit in Minn.Stat. § 642.04 (1980) is the notion that a city is responsible for providing medical aid to its prisoners. *See* Minn.Stat. § 642.04.

The general statutory scheme in Minnesota is that counties (as subdivisions of the state) are responsible for violators of state statutes and cities are responsible for violators of city ordinances. *See* Minn. Stat. §§ 641.12, 642.04, –.06 (1980). Statutory law does not provide us with any guidance about how to allocate the responsibility for medical expenses incurred by suspects who are injured and arrested by city police but subsequently charged with violating state law. Nor is there any case law in Minnesota relevant to this issue.

A number of cases from other jurisdictions do address the question of how responsibility for medical expenses is to be allocated. A majority of the cases adopt a "nature of the offense" approach and hold that a county's liability for medical expenses furnished to a suspect depends on whether the suspect was arrested for violating a state law or a city ordinance.

The Kansas Supreme Court recently adopted the "nature of the offense" test in *Wesley Medical Center v. City of Wichita*, 237 Kan. 807, 703 P.2d 818 (1985). After reviewing the case law from other jurisdictions, the Kansas Supreme Court held that:

> [S]o long as an offender is arrested for violation of a state law and in due course is charged with a state crime and delivered to the county jail for confinement, the medical and other incidental expenses incurred as a consequence of and following his arrest, and until his transfer to such facility, are chargeable to the county. We further hold that a county's liability for charges and expenses for safekeeping and maintenance of the prisoner, including medical expenses, does not depend on which police agency happens to be called to the scene of the alleged crime * * *. The controlling factor is that the prisoner was arrested and subsequently charged with violation of a state law.

*Id.* at 815, 703 P.2d at 824.

Other jurisdictions have adopted a similar approach. *See Washington Township Hospital District of Alameda County v. County of Alameda*, 263 Cal.App.2d 272, 69 Cal.Rptr. 442 (1968); *Zieger Osteopathic Hospital v. Wayne County*, 139 Mich. App. 630, 363 N.W.2d 28 (1984); *St. Mary's Hospital v. Saginaw County*, 139 Mich. App. 647, 363 N.W.2d 32 (1984); *Albany General Hospital v. Dalton*, 69 Or.App. 204, 684 P.2d 34 (1984); *Oregon State Board of Higher Education v. Wash-*

*ington County,* 52 Or.App. 369, 629 P.2d 373, *rev. denied,* 291 Or. 368, 634 P.2d 1347 (1981); *Rogue Valley Memorial Hospital v. Jackson County,* 52 Or.App. 357, 629 P.2d 377, *rev. denied,* 291 Or. 368, 634 P.2d 1347 (1981). *See also St. Mary of Nazareth Hospital v. City of Chicago,* 29 Ill. App.3d 511, 331 N.E.2d 142 (1975). *But cf. Sisters of Third Order of St. Francis v. Tazewell County,* 122 Ill.App.3d 605, 78 Ill.Dec. 230, 461 N.E.2d 1064 (1984) (in order for a county to be liable for medical expenses, the patient has to be charged with a state offense prior to or during hospitalization).

The Ohio Court of Appeals adopted the minority rule in *Cuyahoga County Hospital v. City of Cleveland,* 15 Ohio App.3d 70, 472 N.E.2d 757 (1984). In *Cuyahoga County Hospital,* the court held that the responsibility for the care of a prisoner falls upon the entity who exerts actual, physical dominion and control over the prisoner. *Id.* at 71, 472 N.E.2d at 759.

We conclude that the majority approach is more consistent with the legislative policy in Minnesota which allocates the responsibility of county prisoners to the counties and the responsibility of city prisoners to cities. We agree with the majority approach that a county's liability for medical expenses incurred by a prisoner should not depend on which law enforcement agency is called to the scene of the alleged crime or whether the prisoner is hospitalized before or after the prisoner is placed in the county jail. The key factor is whether the alleged offender is arrested for violating state law or for violating a city ordinance. Thus, in the present case, the trial court properly determined that St. Louis County is obligated to pay Leisz' and Filippi's medical expenses.

A number of additional policy reasons support our decision in this case. First, given the relative budgets of cities and counties in Minnesota, it is more practical to impose responsibility for these kinds of medical expenses on counties in Minnesota. Second, the alternative "custody" approach may encourage counties to delay taking a hospitalized suspect into custody in order to avoid responsibility for the suspect's medical expenses. Finally, the alternative approach may discourage cities from enforcing state laws in an attempt to prevent liability for the type of medical expenses which arose here. We do not agree with St. Louis County that our decision allows other governmental units to avoid responsibility for their actions while arresting suspects.

■ The trial court also properly determined that St. Louis County is responsible for the expenses of the security services which the City of Ely procured. St. Louis County was responsible for Leisz and Filippi from the time that they were arrested and suspected of committing a felony. The City of Ely is entitled to reimbursement for performing the county's role in detaining and guarding Leisz and Filippi. *See Rogue Valley Memorial Hospital,* 52 Or.App. at 363, 629 P.2d at 381; *St. Mary of Nazarath Hospital,* 29 Ill.App.3d at 516, 331 N.E.2d at 146.

## II.

Virginia Regional challenges the trial court's denial of prejudgment interest. Virginia Regional argues that it is entitled to interest on its judgment against St. Louis County, accruing from the date when it requested payment for the medical treatment rendered to Leisz and Filippi until the date of the judgment. We agree.

■ In 1984, the Minnesota Legislature amended Minn.Stat. § 549.09, subd. 1 (1984) to provide prejudgment interest in most cases. *See* 1984 Minn. Laws ch. 399, § 1. *See also Summit Court, Inc. v. Northern States Power Co.,* 354 N.W.2d 13, 16 n. 1 (Minn.1984). That amendment became effective July 1, 1984, and interest began to accrue on that date on any pending causes of action. 1984 Minn.Laws. ch. 472, § 2.

We find that the 1984 amendment applies in this case with respect to the time period between July 1, 1984 and March 14, 1985, the date judgment was entered against St.

Louis County. For that time period, Virginia Regional is entitled to interest calculated pursuant to Minn.Stat. § 549.09, subd. 1(c).

A plaintiff is entitled to prejudgment interest on a final judgment if damages are liquidated or, if unliquidated, are ascertainable by computation or reference to generally recognized standards and do not depend upon contingencies. *Jostens, Inc. v. CNA Insurance Continental Casualty Co.,* 336 N.W.2d 544, 546 (Minn.1983). Virginia Regional's demand for payment of the medical treatment rendered to Leisz and Filippi meets this test. *See id. See also Gand v. Jay Brothers, Inc.,* 367 N.W.2d 645, 647 (Minn.Ct.App.1985). Therefore, we find that Virginia Regional is also entitled to interest on its judgment for the time period between the date it first requested payment from St. Louis County and July 1, 1984.

We recognize that there was a good faith dispute about who was liable for Virginia Regional's medical services. However, there was no dispute about the amount of Virginia Regional's claim. *See Polaris Industries v. Plastics, Inc.,* 299 N.W.2d 414, 418 (Minn.1980). This is not a case such as *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 132, 211 N.W.2d 159, 169 (1973), where both the amount of damages and the apportionment of damages was not readily ascertainable before trial. The fact that St. Louis County denied liability for Virginia Regional's medical services did not prevent the county from calculating its *potential* liability. *See Pearson-Berke, Inc. v. McIntosh,* 350 N.W.2d 378, 379 (Minn.1984).

Since St. Louis County could not ascertain its potential liability until Virginia Regional demanded payment from it, interest is to be assessed against the county only from the date when Virginia Regional first demanded payment from it. *See Jostens,* 336 N.W.2d at 546. The trial court should determine on remand when that demand for payment was made. The interest allowed from the date of Virginia Regional's demand for payment until July 1, 1984,

shall be computed at an annual rate of six percent, the legal rate of interest. *See* Minn.Stat. § 334.01, subd. 1 (1980).

**DECISION**

The trial court properly awarded judgment in favor of the medical care providers and against St. Louis County. The trial court also properly ordered St. Louis County to reimburse the City of Ely for the security services which the City of Ely procured. The trial court erred, however, in denying Virginia Regional Medical Center's request for prejudgment interest. We remand to the trial court for a determination and award of prejudgment interest to Virginia Regional Medical Center consistent with this opinion.

Affirmed in part, reversed in part and remanded.