**COUNTY OF AITKIN, Respondent,**

v.

**DEPARTMENT OF CORRECTIONS, State of Minnesota, Appellant.**

**No. C2–86–840.**

Court of Appeals of Minnesota.

Oct. 21, 1986.

Review Denied Dec. 12, 1986.

John R. Leitner, Aitkin Co. Atty., Aitkin, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Elizabeth V. Cutter, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by FORS-BERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

FORSBERG, Judge.

This case arises out of Aitkin County's attempted reimbursement from the State, Department of Corrections, for expenses it incurred relating to medical treatment of a prisoner. The matter was presented to the trial court on cross-motions to dismiss and for summary judgment. The trial court granted summary judgment in favor of Aitkin County against the Department of Corrections in the amount of $11,015.22.

## FACTS

The facts of this case are undisputed. Eric Warren Hulin ("Hulin") was convicted in 1981 of two felonies. Imposition of his sentence was stayed and he was placed on probation for five years. One condition of probation was that he remain law-abiding. On June 30, 1985, Hulin was convicted by an Aitkin County jury of attempted murder in the first degree. Consequently, the court revoked its 1981 stay of imposition, vacated Hulin's probation, and scheduled sentencing for probation revocation on August 8, 1985. On that date, Hulin admitted his conviction of June 30, 1985, his probation was revoked, and he was sentenced to a term of twelve months and one day in the custody of the Commissioner of Corrections for the State of Minnesota. Since sentencing for Hulin's attempted murder conviction was scheduled just 4 days later, on August 12, 1985, the Aitkin County Sheriff did not transfer Hulin to a state correctional facility at that time but, rather, held him in the Aitkin County jail awaiting sentencing.

Two days before his scheduled sentencing for the attempted murder conviction, Hulin suffered self-inflicted wounds requiring immediate hospitalization. The total amount expended for his medical care was $22,030.45.

Aitkin County brought suit against the State of Minnesota to recover the amount paid. The State moved to dismiss pursuant to Minn.R.Civ.P. 12.02(5) on the ground that plaintiff's complaint failed to state a claim against defendant upon which relief could be granted. The County moved for

summary judgment. The trial court granted the County's motion for summary judgment, but found that at the time the medical costs were incurred Hulin was in "dual custody" and thus the State and County were each required to pay half of Hulin's medical expenses.

## ISSUE

Did the trial court err in determining that the State and the County were jointly liable for medical costs incurred by a prisoner held in the county jail after sentencing and commitment to the Commissioner of Corrections on one offense, but prior to sentencing on a second offense?

## ANALYSIS

The standard of review on appeal from summary judgment is whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328 (Minn.1979). In this case, the facts are concededly undisputed, and the only issue on appeal is whether the trial court erred in its application of the law.

■ Statutory law requires that a county provide medical aid for its prisoners. Minn.Stat. § 641.15 (1980). Similarly, a state prison is responsible for providing necessary medical treatment to its inmates. *Hines v. Anderson*, 439 F.Supp. 12 (D.Minn.1977). Minn.Stat. 241.021, subd. 4 requires the Commissioner of Corrections to provide health care to all persons confined in institutions under its control, and to pay the costs of their medical care in hospitals and other medical facilities not under the control of the Commissioner of Corrections.

■ In disputes between two governmental entities over which is responsible for medical costs incurred by a prisoner in the custody of one, but held for the benefit of another, two theories have developed. A minority of courts have applied the custody and control rule, which places responsibility for the care of a prisoner upon the entity which exerts actual physical dominion and control over the prisoner. Under this approach, the care the prisoner receives is seen not as incident to the crime, but to the custody. *Cuyahoga County Hospital v. City of Cleveland*, 15 Ohio App.3d 70, 472 N.E.2d 757 (1984).

The custody and control rule has been specifically rejected by this court in favor of the majority—"nature of the offense" rule. *L.P. Medical Specialists v. St. Louis County*, 379 N.W.2d 104, 109 (Minn.Ct. App.1985). Under this approach, liability for medical care is imposed based on the nature of the offense for which the individual is being held. *Id.* The inquiry does not concern who has physical control over the person, but rather, focuses on the purpose for which the person is being held.

In *L.P. Medical Specialists*, the first Minnesota case to deal with this issue, the prisoner-patient was in the physical custody of the city police after having committed a state offense. Applying "nature of the offense" reasoning, the court assessed liability for medical treatment against the county, because the prisoner was being held for committing a state offense. *Id.* at 107.

■ Here, as in *L.P. Medical Specialists*, there were two governmental entities asserting control over a prisoner. Both disclaimed liability for his emergency medical care. When medical treatment was rendered, Hulin was being held by the County for sentencing on a violation of state law. At the same time, he was under the control of the State Department of Corrections because he had been sentenced on a prior offense two days earlier.

The trial court, emphasizing the dual custody aspect, decided that the County *and* the Department of Corrections were jointly liable, and should split the medical costs of prisoner Hulin. In so deciding, the trial court failed to correctly apply the "nature of the offense" reasoning. While it is true that the first sentencing had caused Hulin to be placed under the control of the State Department of Corrections, this factor has no bearing in the "nature of the offense" analysis. It is irrelevant which entity has actual physical control or custody of the prisoner-patient. This court has deter-

mined that in assessing liability in a case such as this, the key consideration is the *purpose* for which the person is held.

In this case, the sole reason and purpose for which the prisoner-patient was being held in the county jail was his pending sentencing on a state criminal charge. Accordingly, he was the County's prisoner and the County was liable for the medical expenses he incurred.

### DECISION

The trial court was incorrect in assessing joint liability for a prisoner's medical expenses to the State and the County. Since the prisoner was being held in the county jail pending sentencing, the County was solely liable for the medical expenses he incurred.

Reversed.