Argued and submitted April 20, 1987, reversed on appeal and reversed and remanded in part, otherwise affirmed on cross-appeal March 9, Marion County's reconsideration and Salem Hospital's reconsideration denied May 6, both petitions for review allowed June 7, 1988 (306 Or 78)

## SALEM HOSPITAL,
*Respondent - Cross-Appellant,*

*v.*

## MARION COUNTY et al,
*Cross-Respondents,*

*and*

## LAWRENCE,
*Defendant,*

*and*

## STATE OF OREGON CORRECTIONS DIVISION,
*Appellant.*

(144,940; CA A39053)

750 P2d 1212

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Christine L. Dickey, Assistant Attorney General, Salem.

D. Erik Larson, Salem, argued the cause for respondent - cross-appellant. With him on the briefs was Brand & Larson, Salem.

Robert Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the brief for cross-respondents.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

On February 10, 1983, defendant Lawrence[1] was released on parole by the Corrections Division (Division). On April 19, 1983, his parole officer, a Marion County employe, took him into custody for allegedly violating a condition of parole. He was confined in the Marion County jail, and the parole officer lodged a parole detainer against him. During the night of May 1, he became seriously ill. A Marion County nurse determined that he should be taken to Salem Hospital (hospital), because the jail lacked adequate facilities to treat him. A Marion County release officer prepared an agreement, which defendant signed, providing that he was to report to his parole officer after release from Salem Hospital. The agreement was approved by the supervising release officer, an employe of Division, and defendant was taken by ambulance to the hospital, where he was admitted but not placed under guard.

Hospital brought this action to recover the cost of the medical care provided to Lawrence. After a trial to the court on stipulated facts, the court held that he was in the constructive custody[2] of Division and that he and Division were liable for the medical expenses incurred. The court also held that Marion County and Sheriff Foster (collectively herein County) were not liable and dismissed the action against them. Division appeals, and hospital cross-appeals from the dismissal of County. We reverse on appeal and on cross-appeal.

Hospital argues that Division is responsible pursuant

---

[1] Lawrence is not a party to this appeal.

[2] The trial judge explained:

"My reasoning in reaching these findings is based upon the fact that Mr. Lawrence was being held pursuant to a parole violation detainer for the benefit of the Corrections Division. This custody situation is not within the statutory definitions of ORS Chapter 169.

"The parole officer, though a county employee was acting in the capacity of a parole officer, performing duties for the Corrections Division, not the County.

"I distinguish this from the cited cases because Mr. Lawrence was not being held pursuant to a criminal charge or a sentence.

"Lawrence was in the constructive custody of the Corrections Division, and the responsibility for the medical expense lies with the State of Oregon if not paid by the patient."

to ORS 179.486, ORS 179.490 and ORS 144.075. However, those statutes do not provide authority to impose direct liability against Division. ORS 179.486 provides, in pertinent part:

> "(1) The institution from which a transfer or conveyance is made shall pay from its appropriation the cost of such of the following items as may be incurred in a particular case:
>
> "* * * * *
>
> "(b) Hospital expenses incurred at the Oregon Health Sciences University."

"Institution" as used in this subsection, is defined to include the state correctional facilities, but not the Marion County jail. ORS 179.010(5); ORS 421.005(2). Although defendant, under his parole agreement, was subject to the control of Division and was being held under legal process instigated by the state, nonetheless he was in the physical custody of County, and it cannot be said that his admission to hospital was a transfer from an "institution."

ORS 179.490 also is not applicable to this situation. It provides:

> "In the case of a necessary or emergency operation, requiring the services of a specialist, and where the relatives or guardians, in the judgment of the division, are unable to pay a part or the whole cost of the operation, the division, in its discretion, may have the operation performed, the cost of the operation to be payable from the funds of the institution concerned."

Again, the statute applies in the context of an inmate confined in a state correctional facility. There is no evidence in this case that Division should have or did exercise its discretion under this statute.

Finally, hospital argues that ORS 144.075 imposes liability on Division. It reads:

> "Any expense incurred by the state for returning to the Corrections Division any parole violator or violator of a conditional commutation or conditional pardon shall be paid out of the biennial appropriations made for the payment of the state's portion of the expenses incident to such transportation."

The plain language of this statute does not allow an interpretation which would include medical expenses as reimbursable expenses. The expenses must be "incident to such transportation." Defendant's medical expenses simply were not incident to his transportation to a division facility.[3]

We conclude that County is liable to hospital pursuant to ORS 169.165, which provides:

"Notwithstanding ORS 169.140 and 169.150:

"(1) An individual who receives emergency medical services while in the custody of a local correctional facility is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor; and

"(b) To the keeper of the local correctional facility for any charges or expenses paid by the keeper of the facility for the emergency medical services.

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the keeper of the local correctional facility.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the keeper of the local correctional facility who shall pay the account in accordance with ORS 169.140 and 169.150."[4]

Defendant was in need of emergency medical treatment when he was transported to hospital. The county nurse examined him and found that he was unable to walk or stand and was seriously ill. The nurse determined that he should be transported to hospital for evaluation and treatment pursuant

---

[3] Although we have concluded that Division is not directly responsible to hospital, we have not determined whether County may seek reimbursement from Division pursuant to ORS 206.315 or any other applicable statute or agreement.

[4] Although we agree with County that ORS 169.140 and ORS 169.150 do not impose liability on County for the emergency medical expenses of a parole detainee, we do not agree that that precludes imposing liability under ORS 169.165. First, 169.165 begins with the phrase "Notwithstanding ORS 169.140 and 169.150," which we read as meaning "notwithstanding the substantive provisions" of those statutes. Additionally, we interpret the reference to ORS 169.140 and ORS 169.150 as an allusion to the procedures for payment addressed in the latter part of ORS 169.150.

to jail policy. Arrangements were made for transport of defendant by ambulance to hospital.[5] The release agreement which defendant signed was designated a conditional release and stated that he was to report to his parole officer upon his release from the hospital.

The release agreement did remove the indicia of formal custody; however, that does not preclude liability under the statute since, under these unique circumstances, Lawrence remained in the constructive custody of County. *See Bd of Higher Educ. v. Wash. Co.,* 52 Or App 369, 629 P2d 373, *rev den* 291 Or 368 (1981); *Mercy Hospital v. Douglas Co.,* 28 Or App 557, 559 P2d 1286 (1977). He was in County's custody when the decision to secure emergency medical services was made. There is no evidence to suggest that he would have been released if he had not become seriously ill. Before his illness he had been held in custody for more than ten days. When hospital accepted Lawrence, he was being transported from the jail and it was an emergency. In such a situation, the hospital should not have to depend on pre-admission arrangements for reimbursement before it accepts a critically ill person, *Sisters of Charity v. Washington Co.,* 244 Or 499, 502, 419 P2d 36 (1966), nor should it have to depend on the internal paperwork of the institution.[6]

On appeal, judgment for respondent - cross-appellant Salem Hospital against appellant State of Oregon Corrections Division reversed; on cross-appeal, reversed and remanded for further appropriate proceedings and to enter judgment against cross-respondents Marion County and Charles Foster; otherwise affirmed.

---

[5] County jail policy dictated:

"Should an inmate present with an acute illness that, in the determination of qualified medical personnel, requires more sophisticated and demanding care than we can provide here, this inmate will be transferred to Salem Memorial Hospital."

An additional policy notice stated:

"An ambulance is to be called *ONLY* for life-threatening crises."

[6] In the light of our conclusion regarding County's liability under ORS 169.165, we need not address whether ORS 30.795(3) might also impose liability on County.