Argued and submitted July 14, the decision of the Court of Appeals affirmed in part, reversed in part and remanded to the trial court with instructions; otherwise affirmed December 20, 1988, reconsideration denied February 14, 1989

SALEM HOSPITAL,
*Petitioner/Cross-Respondent on Review,*

*v.*

MARION COUNTY,
*Respondent/Cross-Petitioner on Review,*

FOSTER,
*Respondent on Review,*

*and*

LAWRENCE,
*Defendant (below),*

*and*

STATE OF OREGON CORRECTIONS DIVISION,
*Respondent on Review.*

(TC 144,940; CA A39053; SC S35088, S35089)

766 P2d 376

Erik Larson, Blair, MacDonald, Jensen, Pagel & Larson, Salem, argued the cause and filed the petition and response for petitioner/cross-respondent on review Salem Hospital.

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the petition for respondent/cross-petitioner on review Marion County and respondent on review Charles Foster.

John Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent on review State of Oregon Corrections Division.

Before Peterson, Chief Justice, Linde, Campbell, Carson, Jones and Gillette, Justices, and Van Hoomissen, Justice pro tempore.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The question is whether the Oregon Corrections Division (Division), or Marion County and Sheriff Foster (County), or both, are liable to Salem Hospital (Hospital) for the cost of emergency medical care which Hospital provided to defendant Lawrence.[1] The trial court held that Division is liable. The Court of Appeals disagreed, holding that County is liable. *Salem Hospital v. Marion County,* 90 Or App 180, 750 P2d 1212 (1988). We conclude that neither Division nor County is liable.

The stipulated facts show that in 1982, Lawrence began serving a five-year term of imprisonment in Division's legal and physical custody. In 1983, he was paroled and released from Division's physical custody. His parole was conditioned on his refraining from using intoxicating beverages. Division required him to report to County's Corrections Department. His parole officer, Dezsofi, was County's employe. On April 19, 1983, Dezsofi arrested Lawrence for using intoxicating beverages and lodged him in County's jail on a parole detainer. ORS 144.350(1).[2]

During the night of May 1, Lawrence became seriously ill. A jail nurse determined that he should be taken to the hospital for evaluation and treatment.[3] Eisenbrandt, a county release officer, prepared a release agreement which authorized Lawrence's release and ordered him to report to Dezsofi on discharge from the hospital. Lawrence signed the agreement. Eisenbrandt's supervisor, Frost, a state release officer appointed by the Circuit Court under state statute, approved Lawrence's release. At the time, Lawrence was

---

[1] The trial court entered judgment against Lawrence. He is not a party to this appeal.

[2] ORS 144.350(1) provides in part:

"(1) The Department of Corrections may order the arrest and detention of any person then under the supervision or control of the department upon being informed and having reasonable grounds to believe that such person has violated the conditions of parole."

The laws applicable to warrants of arrest apply to orders issued under ORS 144.350. ORS 144.360.

[3] County's jail policy directs:

"Should an inmate present with [sic] an acute illness that, in the determination of qualified medical personnel, requires more sophisticated and demanding care than we can provide here, this inmate will be transferred to Salem Memorial Hospital."

seriously ill and unable to walk or stand. He was taken by ambulance to the hospital. No County employe accompanied him. He was not assigned to the room usually used by inmates of state and county correctional facilities which has a guard station, but he was assigned to an unguarded room in the same area. Lawrence was discharged from the hospital on May 11. He did not return to jail[4] but reported to Dezsofi, who arranged for him to be housed at County's Restitution Center until other housing could be found. He signed a statement that he was staying there "voluntarily." So far as the record shows, Lawrence's parole was not suspended.

The issues in this case arise under a statutory framework which is anything but a model of clarity. *Former* ORS 30.795[5] and ORS 169.165[6] make a person who receives emer-

---

[4] Lawrence was arrested on April 19, 1983. He was entitled to release after 15 days if the parole board had not suspended his parole. ORS 144.370. *See West v. Gladden*, 249 Or 18, 21-22, 436 P2d 556 (1968).

[5] *Former* ORS 30.795 provided in part:

"(1) An individual who receives emergency medical services while in the custody of a law enforcement officer is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor; and

"(b) To the public agency by which the law enforcement officer is employed for any charges or expenses paid by the public agency for the emergency medical services.

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the public agency.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the public agency who shall pay the account.

"* * * * *

"(4) As used in this section:

"(a) 'Law enforcement officer' means an officer who is commissioned and employed by a public agency as a peace officer to enforce the criminal laws of this state or laws or ordinances of a public agency.

"(b) 'Public agency' means the state, a city, port, school district, mass transit district or county."

Subsequent to the events involved in this appeal, subsection 4(b) was amended to include the state within the definition of public agency.

[6] ORS 169.165 provides in part:

"Notwithstanding ORS 169.140 and 169.150:

"(1) An individual who receives emergency medical services while in the custody of a local correctional facility is liable:

"(a) To the provider of the emergency medical services for the charges and

gency medical care while in the custody of a law enforcement officer or local correctional facility liable to the provider for the cost of such care. Those statutes also impose a duty on a care provider to first attempt to collect from the patient before trying to collect from the public. Under certain conditions, those statutes impose liability on the public and make the patient liable to the public in the event that the public pays the provider. ORS 169.076[7] and ORS 169.140[8] prescribe standards for local correctional institutions. ORS 169.150[9] and ORS 169.220[10] are concerned with local correctional facilities'

---

expenses therefor; and

"(b) To the keeper of the local correctional facility for any charges or expenses paid by the keeper of the facility for the emergency medical services.

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the keeper of the local correctional facility.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the keeper of the local correctional facility who shall pay the account in accordance with ORS 169.140 and 169.150."

[7] ORS 169.076 provides in part:

"Each local correctional facility shall:

"* * * * *

"(5) Provide for emergency medical and dental health * * *."

[8] ORS 169.140 provides:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and necessary medical aid."

ORS 169.005(6) provides:

"As used in ORS 169.005 to 169.680 * * *, unless the context requires otherwise:

"* * * * *

"(6) 'Prisoner' means a person held with criminal charges or sentenced to the facility."

[9] ORS 169.150 provides:

"The charges and expenses for the safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall, unless otherwise provided by law, be paid out of the treasury of the county. The account of the keeper shall be first allowed by the county court or board of county commissioners of the county from which the prisoner was committed."

[10] ORS 169.220 provides in part:

"All persons lawfully confined in a county local correctional facility, or as prisoners engaged in work under the custody and jurisdiction of a county, shall be

budgets. ORS 144.075,[11] ORS 179.486[12] and ORS 179.490[13] are concerned with the budgets of Department and state institutions operated by Department.

Hospital brought this action against Lawrence, County and Division to recover the cost of Lawrence's emergency medical care. In its amended complaint, Hospital specifically claimed that County was liable under ORS 30.795, 169.140, 169.150, 169.220 and 169.076. It asserted that it had satisfied the requirements of ORS 30.795 and 169.165 by first trying to collect from Lawrence. Hospital did not specifically claim, however, that ORS 169.165 was an independent basis for County liability. Hospital also claimed that Division was liable under ORS 144.075, 179.486 and 179.490. It made no common law claim against any defendant.

The trial court held Lawrence and Division liable.[14] It

---

fed and maintained at actual cost to the county. All persons confined in a county local correctional facility shall be given three meals per day. * * *. All supplies and equipment needed to feed and maintain such persons as provided in this section shall be purchased by the county court or board of county commissioners upon requisitions duly verified and presented by the sheriff to the county court or board of county commissioners * * *."

[11] ORS 144.075 provides:

"Any expense incurred by the state for returning to the Department of Corrections any parole violator or violator of a conditional commutation or conditional pardon shall be paid out of the biennial appropriations made for the payment of the state's portion of the expenses incident to such transportation."

[12] ORS 179.486 provides in part:

"(1) The institution from which a transfer or conveyance is made shall pay from its appropriation the cost of such of the following items as may be incurred in a particular case:

"* * * * *

"(c) Examination, treatment and hospital expenses incurred in favor of a physician, clinic or hospital, other than the Oregon Health Sciences University."

[13] ORS 179.490 provides:

"In the case of a necessary or emergency operation, requiring the services of a specialist, and where the relatives or guardians, in the judgment of the division, are unable to pay a part or the whole cost of the operation, the division, in its discretion, may have the operation performed, the cost of the operation to be payable from the funds of the institution concerned."

[14] The trial judge explained:

"My reasoning in reaching these findings is based upon the fact that Mr. Lawrence was being held pursuant to a parole violation detainer for the benefit of the Corrections Division. This custody situation is not within the statutory definitions of ORS Chapter 169.

"The parole officer, though a county employee was acting in the capacity of a

did not identify the statutory basis for Division's liability. The court dismissed Hospital's action against County, finding no county liability under ORS chapter 169. It did not address the issue of County liability under ORS 30.795. Division appealed, and Hospital cross-appealed from the dismissal of County. The Court of Appeals reversed, holding Division not liable, but that County was liable under ORS 169.165(3). *Salem Hospital v. Marion County, supra.* County and Hospital petitioned for review.

County contends that the Court of Appeals erred in holding it liable under ORS 169.165. It first argues that Hospital should not prevail on a theory not asserted in Hospital's pleadings, or argued at trial or in the Court of Appeals. Assuming that ORS 169.165 is before this court, County argues that the Court of Appeals erred in finding County liable under that statute. In the alternative, County argues that this case should be remanded to the trial court for further proceedings not inconsistent with the Court of Appeals's interpretation of ORS 169.165. Hospital agrees with the Court of Appeals that County is liable under ORS 169.165. Hospital contends that County also is liable under ORS 30.795. Hospital also contends that the Court of Appeals erred in not holding Division liable.

■ We first address County's liability. This is a case of first impression under ORS 169.165. In its Court of Appeals

---

parole officer, performing duties for the Corrections Division, not the County.

"I distinguish this from the cited cases because Mr. Lawrence was not being held pursuant to a criminal charge or a sentence.

"Lawrence was in constructive custody of the Corrections Division, and the responsibility for the medical expenses lies with the State of Oregon if not paid by the patient."

[15] In its amended complaint, Hospital did not list ORS 169.165 as a substantive basis for County liability. Hospital's amended complaint alleges in part:

"IV.

"That under and pursuant to ORS 30.795, ORS 169.076, ORS 169.140, ORS 169.150, and ORS 169.220, CHARLES FOSTER, Marion County Sheriff, and MARION COUNTY, as the county responsible for the furnishing of emergency and necessary medical aid and care, and for maintaining persons lawfully confined, is indebted to SALEM HOSPITAL in said sum of THREE THOUSAND SEVEN HUNDRED THIRTY-EIGHT AND 10/100 ($3,738.10) DOLLARS, plus interest thereon at twelve percent (12%) per annum from May 13, 1983, until paid.

brief, Hospital only argued that

> "Salem Hospital properly followed the procedure set forth at ORS 169.165(3)(a) in making demand on the keeper for payment for medical services furnished an individual in his custody for which the keeper, the Marion County Sheriff, is liable."

and

> "Salem Hospital made statutory demand for payment, following ORS 169.165."

Prior to the Court of Appeals' decision in this case, no case had found county liability under ORS 169.165. Liability had been found under ORS 169.140 and 169.150.[16] Nonetheless, the Court of Appeals held County liable under ORS 169.165 and, therefore, we consider County's liability under that statute. ORAP 10.15(2). For the reasons explained below, we conclude that the Court of Appeals erred.

ORS 169.165(1)(a) made Lawrence liable to Hospital for his emergency medical care. ORS 169.165(1)(b) made Lawrence liable to County for any money County payed Hospital for his emergency medical care. ORS 169.165(2) required Hospital to try to collect from Lawrence before trying to collect from County.

---

"V.

"That demand has been made upon MARION COUNTY and CHARLES FOSTER, Marion County Sheriff, pursuant to ORS 169.165 and ORS 30.795, for payment of the indebtedness aforesaid, but Defendants MARION COUNTY and CHARLES FOSTER, Marion County Sheriff, have failed and refused to pay the same."

ORCP 16B provides:

"Every pleading shall consist of plain and concise statements in paragraphs consecutively numbered throughout the pleading with Arabic numbers, the contents of which shall be limited as far as practicable to a statement of a single set of circumstances, and a paragraph may be referred to by number in all succeeding pleadings. Each separate claim or defense shall be separately stated. Within each claim alternative theories of recovery shall be identified as separate count."

A pleader need not refer to any statute. Therefore, the failure to mention ORS 169.165 in paragraph IV of Hospital's amended complaint would not bar a claim under that statute.

[16] *See Sisters of Charity v. Washington County*, 244 Or 499, 419 P2d 36 (1966); *see also Bd. of Higher Educ. v. Wash. Co.*, 52 Or App 369, 629 P2d 373 (1981); *Rogue Valley Memorial Hosp. v. Jackson Cty.*, 52 Or App 357, 629 P2d 377 (1981); *Mercy Hospital v. Douglas County*, 28 Or App 557, 559 P2d 1286 (1977).

ORS 169.165(3) provides that, if Hospital had billed Lawrence and he had not paid his bill within 45 days, Hospital could bill County "who shall pay the account in accordance with ORS 169.140 and ORS 169.150." We read the quoted language to mean that, *if County otherwise was liable under ORS 169.140 and 169.150,* Hospital then could pursue its claim against County under those statutes. We find nothing in the legislative history of ORS 169.165 to support the Court of Appeals's conclusion that liability could be imposed on County for the medical care of any person, except insofar as County otherwise would have been liable under ORS 169.140 and 169.150.

The legislative history of ORS 169.165 clearly shows that that statute was enacted to provide a remedy for a specific problem. Prior to 1979, no law provided that a person who received emergency medical care while in the custody of a local correction facility was liable for the cost of the care. ORS 169.150 mandated that the cost of such care "shall, *unless otherwise provided by law,* be paid out of the treasury of the county." As a result, counties were required to pay for medical care even if the person who received the care had money or insurance sufficient to pay all or part of the cost thereof.

HB 2355 was introduced in the 1979 legislature to solve that problem. The bill was supported by the Association of Oregon Counties. The bill's purpose was to make the person who received emergency medical care the first person liable for its cost. Next, HB 2355 imposed a duty on the care provider to first make reasonable efforts to collect from the person who received the services before seeking to collect from the county. Only thereafter, if the provider had not been paid by the patient in due course, could the provider bill the county. But even then, the county's liability was identical to its pre-1979 liability under ORS 169.140 and 169.150. When the legislature prefaced ORS 169.165 with the words "Notwithstanding ORS 169.140 and 169.150," it intended to declare only that any county liability under those statutes thereafter would be conditioned on the provider first trying to collect from the person who received the care. No new or expanded basis for county liability was intended. The legislative history of ORS 169.165 convinces us that the interpretation given that statute by the Court of Appeals is erroneous. We hold that County is not liable to Hospital under ORS 169.165(3).

■    The Court of Appeals concluded that County is not liable under ORS 169.140 and ORS 169.150. *Salem Hospital v. Marion County, supra,* 90 Or App at 185 n 4. We agree. Lawrence was not a "prisoner," for the purposes of ORS 169.140. *See* ORS 169.005(6), *supra* n 8. He was not being held with criminal charges. He was being held under ORS 144.350(1) on an allegation that he had violated his parole by using intoxicating beverages. He was not "sentenced" to County's jail. After Lawrence was released from County's jail pursuant to a lawful order, he was no longer in the custody of County. The decision to release Lawrence was not County's decision. He was released by authority of Frost, a state release supervisor appointed by the Circuit Court under state law. Lawrence was ordered to report to his parole officer on discharge from the hospital. County had no further authority over Lawrence and it could not have returned him to jail. *See* n 4, *supra.* Therefore, County had no duty under ORS 165.140 to pay for his emergency medical care.

Nor do we find any basis for imposing liability on County under ORS 169.150. Lawrence was not committed to County's jail "for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt." Therefore, County had no duty under ORS 169.150 to pay for his emergency medical care.

Finally, County is not liable under ORS 169.220. For the reasons already explained, Lawrence was not in County's custody at the time he received medical care. In view of the several statutes relating to payment for emergency medical care, we are not persuaded that ORS 169.220 was intended to cover more than food and maintenance *within* a county local correctional facility.

Hospital argues that County also is liable under ORS 30.795. That statute is not applicable in this case. Lawrence was not in the custody of "a law enforcement officer" when he received emergency medical care. *See* ORS 30.795(4)(a). At most, he was in the *legal,* but not physical, custody of Division.

ORS 169.076 establishes standards for local correctional facilities. We do not find County liability under ORS 169.076(5) because Lawrence was not a "confined detainee" at the time he received emergency medical care at the hospital.

He had been released from County's jail pursuant to a lawful order. He no longer was in County's custody.

In sum, Hospital has failed to show that County is liable on any statutory ground. Accordingly, we reverse the Court of Appeals's holding that County is liable.

■　　　We next address Division's liability. Hospital contends that Division is liable under ORS 144.075, 179.486 and 179.490. The trial court made a general finding that Division was liable under those statutes; however, the court did not explain how the stipulated facts in this case come within the specific language of those statutes. The Court of Appeals held that those statutes do not impose liability on Division. *Salem Hospital v. Marion County, supra,* 90 Or App at 184-85. We agree.

ORS 144.075 details how payment of expenses incurred by the state for returning parole "violators" to Division shall be made. At the time he was in Hospital's care, Lawrence was not a parole violator. At most, he was an alleged parole violator. As far as the record shows, his parole was not suspended as a result of his arrest on April 19. Furthermore, the plain language of ORS 144.075 requires that any expense incurred for returning a violator must be "incident to such transportation" to Division. Lawrence was not being "transported" to Division.

ORS 179.486 relates to transfers of inmates from Division's several "institutions." As used in ORS 179.486(1), "institution" is defined to include Division's correctional facilities, but not County's jail. ORS 179.010(5); ORS 179.321(2); ORS 421.005(2). While Lawrence was subject to Division's "control" and, initially, he was held in County's jail for Division under ORS 144.350(1), those facts do not bring him within the scope of ORS 179.486. That statute only applies to persons confined in a state correctional institution. Lawrence was not transferred from one of Division's institutions to the hospital. Hospital makes no argument in this case that Division did, or should have, exercised its discretion under ORS 179.486. Because Lawrence was not transferred from any of Division's institutions, there is no institutional appropriation from which his medical care may be paid under ORS 179.486(1).

ORS 179.490 also applies to inmates of Division's institutions. For the reasons stated above, that statute has no application to the facts of this case.

In sum, Hospital has failed to show that Division is liable on any statutory ground. Accordingly, we affirm the Court of Appeals's holding that Division is not liable.

Implicit in Hospital's argument is the notion that either County or Division, or both, must be liable in this case because it would be "unfair" if Hospital is not paid from public funds for the care it gave Lawrence. We disagree. We hold that there is no statutory basis for imposing liability on County or Division. The problem must be resolved by the legislature, not the courts.

The decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the trial court with instructions to reinstate the trial court's judgment in favor of Marion County and Charles Foster, and to enter judgment in favor of the State of Oregon Corrections Division and against Salem Hospital; otherwise affirmed.