Argued and submitted May 7, decision of Court of Appeals reversed; judgment of circuit court affirmed in part, reversed in part and remanded to circuit court for further proceedings October 22, 1992

EMANUEL HOSPITAL,
*Respondent on Review/Petitioner on Review,*

*v.*

UMATILLA COUNTY,
*Petitioner on Review/Respondent on Review,*

*and*

THE CITY OF HERMISTON,
*Respondent on Review.*

(CC A8810-05360; CA A63891;
SC S38849, S38921)

840 P2d 56

Peter H. Wells, Assistant County Counsel, Pendleton, argued the cause and filed the petition for review for Umatilla County.

Jeffrey M. Batchelor, of Lane Powell Spears Lubersky, Portland, argued the cause and filed the petition for review for Emanual Hospital and filed a response to Umatilla County's petition for review.

Katherine G. Georges, Portland, argued the cause for the City of Hermiston and filed responses to the petitions for review.

Paul Snider, Legal Counsel, Association of Oregon Counties, Salem, and John B. Leahy, of Williams, Fredrickson, Stark & Weinsensee, P.C., Portland, filed a brief on behalf of *amicus curiae* Association of Oregon Counties.

PETERSON, J.

PETERSON, J.

Emanuel Hospital (Emanuel) brought this action against the City of Hermiston (Hermiston) and Umatilla County to recover for medical treatment of a patient apprehended by a Hermiston police officer. The trial court granted summary judgment in favor of Hermiston and Umatilla County. The Court of Appeals affirmed the summary judgment in favor of Hermiston and reversed and remanded with regard to Umatilla County. *Emanuel Hospital v. Umatilla County*, 110 Or App 206, 823 P2d 421 (1991).

The parties stipulated to the following facts: On December 29, 1986, in Hermiston, Umatilla County, an individual, Rodriguez, attempted to assault a Hermiston police officer with a knife. In response, the officer shot Rodriguez, wounding him in the arms, chest, and heart. Had Rodriguez not been wounded, he would have been arrested for attempted assault and transported to the Umatilla County jail pending arraignment and trial. The officer immediately arranged for Rodriguez to be taken to Good Shepherd Hospital in Hermiston. Because of the severity of his wounds, Rodriguez was transported by helicopter to Emanuel in Portland. Rodriguez remained in Emanuel, unguarded, for six days. On his discharge January 5, 1987, he was arrested by an Oregon State Police officer and transported to the Umatilla County jail. Rodriguez had no health insurance. About every three weeks, between April 1987 and February 1988, Emanuel sent bills for medical services to Rodriguez at his mailing address, the Umatilla County jail. On September 20, 1988, Emanuel billed both Umatilla County and Hermiston for the medical services that it had provided to Rodriguez.

We first address Hermiston's liability to Emanuel. Emanuel based its claim solely on ORS 30.795,[1] which

---

[1] ORS 30.795 provides in part:

"(1) An individual who receives emergency medical services while in the custody of a law enforcement officer is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor;

"(b) To the public agency by which the law enforcement officer is employed for any charges or expenses paid by the public agency for the emergency medical services.

provides in part that, when an individual in the custody of a law enforcement officer receives emergency medical care, that individual is primarily liable for the cost of that care. If the individual does not pay within 45 days of billing, "the provider may bill the public agency [that employs the law enforcement officer] who shall pay the account." The bill to the agency must be accompanied by evidence documenting that "[t]he provider has made a reasonable effort to collect from the individual or the individual's insurer."

Hermiston contends that ORS 30.795 does not provide an independent basis to impose liability on Hermiston. Its argument is as follows:

ORS 30.795 was enacted in conjunction with another statute nearly identical in wording, ORS 169.165.[2] ORS 169.165 concerns the liability of

---

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the public agency.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the public agency who shall pay the account.

"(b) A bill submitted to the public agency under this subsection must be accompanied by evidence documenting that:

"(A) The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B) The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed the provider.

"* * * * *

"(4) As used in this section:

"(a) 'Law enforcement officer' means an officer who is commissioned and employed by a public agency as a peace officer to enforce the criminal laws of this state or laws or ordinances of a public agency.

"(b) 'Public agency' means the state, a city, port, school district, mass transit district, or county."

[2] ORS 169.165 in part provides:

"Notwithstanding ORS 169.140 and 169.150:

"(1) An individual who receives emergency medical services while in the custody of a local correctional facility is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor; and

"(b) To the keeper of the local correctional facility for any charges or expenses paid by the keeper of the facility for the emergency medical services.

correctional facilities for medical services performed for individuals in the custody of correctional facilities. *Salem Hospital v. Marion County*, 307 Or 213, 222, 766 P2d 376 (1988), held that ORS 169.165 did not itself create new substantive liability for correctional facilities. Rather, that statute's sole purpose was "to make the person who received emergency medical care the first person liable for its cost." *Ibid.* Hermiston argues that, because the legislature enacted ORS 30.795 in the same bill in which it substantially modified ORS 169.165, and because the wording of the statutes is nearly identical, they should be interpreted identically. Hermiston's conclusion: Because ORS 169.165 created no new substantive liability for correctional facilities, neither does ORS 30.795.

We disagree with that conclusion. There is a significant difference between the two statutes, one that bears directly on the question at issue. ORS 169.165(3) refers to two existing statutes, ORS 169.140[3] and 169.150,[4] which

---

"(2)    A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the keeper of the local correctional facility.

"(3)(a)  If the provider has not been paid within 45 days of the date of billing, the provider may bill the keeper of the local correctional facility who shall pay the account in accordance with ORS 169.140 and 169.150.

"(b)    A bill submitted to the keeper of a local correctional facility under this subsection must be accompanied by evidence documenting that:

"(A)    The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B)    The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed to the provider."

[3] ORS 169.140 provides:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and necessary medical aid."

[4] ORS 169.150 provides:

"The charges and expenses for safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the

expressly created medical expense liability for correctional facilities. That is why this court held in *Salem Hospital v. Marion County, supra,* that ORS 169.165 did not create new substantive liability for correctional facilities. ORS 169.165 was enacted

> "to make the person who received emergency medical care the first person liable for its cost. * * * When the legislature prefaced ORS 169.165 with the words 'Notwithstanding ORS 169.140 and 169.150,' it intended to declare only that any county liability under those statutes thereafter would be conditioned on the provider first trying to collect from the person who received the care. No new or expanded basis for county liability was intended." 307 Or at 222.

Unlike ORS 169.165(3), ORS 30.795 does *not* refer to any other existing statute that creates liability for agencies that employ police officers, because there is none. ORS 30.795 *itself creates the liability* by stating, "the provider may bill the public agency *who shall pay the account.*" ORS 30.795(3)(a) (emphasis added). Unless ORS 30.795 creates a new substantive basis for liability of agencies, the phrase in the statute delineating the *procedure* for collecting from those agencies is purposeless. It would be meaningless to create a procedure to collect from an agency, if the agency is not liable for the debt.

Further proof that ORS 30.795 was intended to create agency liability is found in the legislative history. In 1985, ORS 30.795(4)(b) was amended to include the "state" as an agency subject to the statute. Or Laws 1985, ch 530, § 4. A financial analysis of the proposed amendment showed that the state could be required to pay about $500,000 in medical costs for individuals arrested by state police officers. 1985 Regular Legislative Session, Revised Fiscal Analysis of Proposed Legislation, HB 2743 (May 29, 1985). The legislature understood that adding the "state" as an agency subject to ORS 30.795 would make the state liable for medical expenses. The state is not liable for these medical expenses under any other statute. Therefore, only ORS 30.795 could be the basis for the state's liability.

---

non-payment of any fine or for any contempt, shall, unless otherwise provided by law, be paid out of the treasury of the county. The account of the keeper shall be first allowed by the county court or board of county commissioners of the county from which the prisoner was committed."

Based on the plain meaning of ORS 30.795 and the legislature's understanding in 1985 of its effect, we conclude that ORS 30.795 does create substantive liability. We turn, then, to a discussion whether ORS 30.795 applies to Hermiston here.

■ For Hermiston to be liable, Rodriguez must have "receive[d] emergency medical services while in the custody" of a Hermiston police officer. ORS 30.795(1). After threatening the officer with a knife, Rodriguez was shot by the officer. He received wounds to his arms, chest, and heart. The officer arranged for Rodriguez to be taken to a Hermiston hospital.

If a city police officer shoots a suspect, delivers the suspect to a hospital, and then guards the suspect, that suspect would be in the "custody" of the officer under ORS 30.795 (and the city that employs the officer could be liable for the medical expenses). Here, because of the severity of the injuries, Rodriguez was not guarded after he was admitted to the hospital. Hermiston should not now be able to *avoid* liability for the medical expenses simply because the injury was so severe that no guard was necessary. Under ORS 30.795, the officer's custody does not end when the injured person is admitted into the hospital or taken to x-ray or surgery. An officer need not be present as a guard throughout the medical treatment for the city to incur liability.

■ In enacting ORS 30.795, the legislature aimed to ensure emergency medical care for individuals while in the custody of law enforcement officers. It did not intend to create governmental liability for the medical expenses of *every* individual brought to a hospital by a police officer. It did intend to create potential governmental liability for medical expenses of any individual "who receives emergency medical services while in the *custody* of a law enforcement officer." ORS 30.795(1) (emphasis added). If an individual is arrested, he or she is in the arresting officer's custody. Likewise, if an individual would have been arrested but for the fact that he or she needed medical care, and the officer brings the person to the provider of care, that individual is in the officer's "custody" for purposes of ORS 30.795.

In the present case, the officer arranged for Rodriguez to be taken to the hospital. Because of the severity of his injuries, Rodriguez clearly was incapable of leaving the hospital. But for those injuries, he would have been arrested. Therefore, Rodriguez was in the custody of the Hermiston police officer when he was brought to the Hermiston hospital. For the purposes of ORS 30.795, that custody continued through the Emanuel hospitalization, as it would have continued had Rodriguez remained at the Hermiston hospital.

■     Granted, Rodriguez was not originally taken to Emanuel, but to a Hermiston hospital. A significant purpose of these statutes is to ensure that wounded or injured persons in custody or in correctional facilities will receive adequate emergency medical care. *See Sisters of Charity v. Washington Co.*, 244 Or 499, 502-03, 419 P2d 36 (1966) ("it would not be good public policy to place a hospital in the position where reimbursement from the county for care to a critically wounded person is dependent on the county first having made arrangements with it for admission"). If a second hospital, one to which the person is brought because it possesses unique medical expertise, cannot collect for its medical services because it was not the original provider of care, it might refuse to provide such services. That could result in denial of care or a lesser level of medical care for those individuals covered by ORS 169.140, 169.150, and 30.795, and would be contrary to one of the main purposes for enacting these statutes. That Emanuel was the second hospital to provide medical services to Rodriguez does not affect our determination that the Hermiston police officer had "custody" of Rodriguez when he received medical treatment from Emanuel. The Court of Appeals therefore erred in affirming summary judgment in favor of Hermiston.

■     In order for Emanuel to collect from Hermiston, it must have complied with ORS 30.795(3). A hospital's bill to the public agency must be accompanied by evidence documenting that the individual or the individual's insurer has been billed and that the hospital has made a reasonable effort to collect from the individual. ORS 30.795(3)(b). On September 20, 1988, Emanuel made demand for payment

on Hermiston. A letter accompanying the demand claimed that itemized bills for medical services were mailed to the individual and that copies of those bills were enclosed. The letter also contained a statement that "reasonable efforts to collect this bill have not resulted in payment." On this record, the reasonableness of Emanuel's efforts to collect is a question of fact. We reverse the decision of the Court of Appeals and remand the case to the trial court to determine whether Emanuel made a reasonable effort to collect from Rodriguez.

■     We next address Umatilla County's liability to Emanuel. Umatilla County operates the local county correctional facility to which Rodriguez was taken after his release from Emanuel. ORS 169.165 provides that, under ORS 169.140 and 169.150, a local correctional facility can be liable for emergency medical expenses of persons in its custody. As noted earlier, a fundamental purpose of ORS 169.140 and 169.150 was to make sure that hospitals would provide medical services to persons in the custody of the corrections system. This was done by creating government liability for that care.

Sisters of Charity v. Washington Co., supra, held that an individual, not yet under arrest, but under guard while receiving medical treatment in a hospital, is in the custody of the keeper of the jail for purposes of ORS 169.140 and 169.150. If the rule of law announced in Sisters of Charity is given equal force with the later-enacted ORS 30.795, it could be argued that both a correctional facility and the city employer of the law enforcement officer have simultaneous custody over a patient and that both are liable for that patient's medical expenses.

No discernible purpose would be served by an interpretation that creates "dual custody" and "dual liability." Further, ORS 30.795 was enacted after this court's decision in Sisters of Charity. The legislature likely intended, in enacting ORS 30.795, to fill a gap to cover those situations in which a person was in the custody of a law enforcement officer (but not yet in the physical custody of a local correctional facility), rather than to create dual liability. When the statutes are read together in this way, they separate correctional facility liability from law enforcement agency

liability. It is logical to conclude that, by enacting ORS 30.795 and thereby making the agency that employs the police officer liable, the legislature intended that a correctional facility not be liable. By enacting ORS 30.795, the legislature has limited a correctional facility's liability to situations in which the patient's connection with the correctional facility is more direct than the connection that exists here.

We hold today that, under ORS 30.795,[5] when a city law enforcement officer has custody of a person while that person is receiving emergency medical care from a provider, the public agency that employs the officer is subject to liability for the cost of that care under ORS 30.795; the county correctional facility to which that person may be sent in the future has no liability for the cost of that medical care under ORS 169.140 and 169.150. Therefore, in the present case, any agency liability for the medical care provided by Emanuel is exclusively Hermiston's. Umatilla County, which operates the local county correctional facility, has no liability.

The decision of the Court of Appeals is reversed. The judgment of the circuit court in favor of Umatilla County is affirmed. The judgment of the circuit court in favor of the City of Hermiston is reversed. The case is remanded to the circuit court for further proceedings.

---

[5] The 1991 Legislative Assembly enacted a law that makes ORS 30.795, 169.165, 137.306 and 137.307 "not * * * operative." Or Laws 1991, ch 778, § 3. This 1991 law, unless extended by the legislature, will "sunset" on July 1, 1993, reviving ORS 30.795 and 169.165. Or Laws 1991, ch 778, § 11. However, a local correctional facility continues to be liable for medical services provided for persons in the custody of that facility. Or Laws 1991, ch 778, § 6. The Law Enforcement Medical Liability Account, which is administered by the Department of Human Resources, now pays the cost of a person's medical treatment obtained while in a law enforcement officer's custody, if that person cannot pay. Or Laws 1991, ch 778, § 7.