Argued and submitted February 22, judgment for city affirmed; judgment for county reversed and remanded December 11, 1991, Umatilla County's reconsideration denied February 19, Emanuel Hospital's reconsideration denied March 4, both petitions for review allowed April 24, 1992 (313 Or 209)

# EMANUEL HOSPITAL,
*Appellant,*

*v.*

# UMATILLA COUNTY
and the City of Hermiston,
*Respondents.*

(A8810-05360; CA A63891)

823 P2d 421

Jeffrey M. Batchelor, Portland, argued the cause for appellant. With him on the briefs were Milo Petranovich, Vicki L. Smith, and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, and Lane Powell Spears Lubersky, Portland.

Peter H. Wells, Assistant Umatilla County Counsel, Pendleton, argued the cause and filed the brief for respondent Umatilla County.

Katherine G. Georges, Portland, argued the cause for respondent City of Hermiston. With her on the brief was Garry P. McMurry & Associates, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

This case involves a dispute over financial responsibility for the medical care of a patient who was treated at Emanuel Hospital (hospital) after being apprehended by the police. The trial court denied hospital's summary judgment motions on its claims against Umatilla County (county) and the City of Hermiston (city) for the medical expenses and granted county's and city's motions for summary judgment.

The controlling facts are stipulated. On December 29, 1986, the patient attempted to assault a city police officer with a knife. The officer responded with gunfire that wounded the patient in the arms, chest and heart. He was not arrested or taken into custody; rather, he was taken immediately to a hospital in Hermiston. State police were called in to assist in the investigation, and city police "stood by" while the patient was in the Hermiston hospital. Two city police officers gathered his clothing as part of the investigation. Because of the severity of his injuries, he was transported early the next morning by helicopter to hospital, which provided emergency medical services in the amount of $14,393.78. The patient was not guarded during his 6-day stay at hospital. He was, however, interviewed by state police officers on two different days. Immediately after his discharge on January 5, 1987, he was arrested on felony charges and transported to the Umatilla County Jail, where he remained for 10 months. He had no health insurance and did not qualify for any other health benefits. Every three weeks for several months, hospital sent bills for its services to the patient at his jail address. When it did not receive payment, hospital requested payment from city and county.

Hospital assigns error to the granting of city's and county's motions and to the denial of its motion for summary judgment. It contends that county is financially responsible, pursuant to ORS 169.140, ORS 169.150 and ORS 169.165, and that city is also responsible under ORS 30.795.

■■ We first examine the financial responsibility of city. As city points out, it is responsible for the medical care of a person confined in a county correctional facility for violation

of a city ordinance. ORS 169.152.[1] It contends that, because the patient was facing criminal charges for violating a state law rather than for violating a city ordinance, it is not liable. Hospital and county contend that city is liable under ORS 30.795,[2] which provides procedures to collect from a patient

---

[1] ORS 169.152 provides:

*"Notwithstanding ORS 169.140, 169.150 and 169.220, when a person is lawfully confined in a county local correctional facility for violation of the city ordinance,* for nonpayment of a fine imposed by a municipal court or as a result of a warrant of arrest issued by a magistrate in another county, the county in which the warrant was issued or *the city shall be liable for the cost of medical care provided to the person while confined in the local correctional facility.* The keeper of the local correctional facility shall bill the other county or city for the actual cost of the medical care provided, and the other county or city shall pay the charges within 60 days after receiving the cost statement from the keeper." (Emphasis supplied.)

[2] ORS 30.795 provides:

"(1)     An individual who receives emergency medical services while in the custody of a law enforcement officer is liable:

"(a)     To the provider of the emergency medical services for the charges and expenses therefor; and

"(b)     To the public agency by which the law enforcement officer is employed for any charges or expenses paid by the public agency for the emergency medical services.

"(2)     A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the public agency.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the public agency who shall pay the account.

"(b)     A bill submitted to the public agency under this subsection must be accompanied by evidence documenting that:

"(A)     The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B)     The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed to the provider.

"(c)     If the provider receives payment from the individual or the insurer or health care contractor after receiving payment from the public agency, the provider shall repay the public agency the amount received from the public agency less any difference between payment received from the individual, insurer or contractor and the amount of the billing.

"(4)     As used in this section:

"(a)     'Law enforcement officer' means an officer who is commissioned and employed by a public agency as a peace officer to enforce the criminal laws of this state or laws or ordinances of a public agency.

"(b)     'Public agency' means the state, a city, port, school district, mass transit district or county."

and any insurer or health care contractor before seeking recovery of medical costs from the public agency that had custody of the person at the time of treatment.

We conclude that ORS 30.795 does not provide an independent basis to impose liability on city. It was enacted in conjunction with an amendment to ORS 169:165.[3] The two statutes are nearly identical, except that ORS 30.795 concerns persons in the custody of a law enforcement officer and ORS 169.165 concerns persons held in correctional facilities. In *Salem Hospital v. Marion County*, 307 Or 213, 222, 766 P2d 376 (1988), the Supreme Court held that ORS 169.165 was enacted to prevent county liability for the medical care of prisoners who had "money or insurance sufficient to pay for all or part of the cost." The Supreme Court held that "[n]o new or expanded basis for county liability was intended" under ORS 169.165. Likewise, we hold that ORS 30.795 provides no new or expanded basis for liability of city.

---

[3] ORS 169.165 provides:

"Notwithstanding ORS 169.140 and 169.150:

"(1)     An individual who receives emergency medical services while in the custody of a local correctional facility is liable:

"(a)     To the provider of the emergency medical services for the charges and expenses therefor; and

"(b)     To the keeper of the local correctional facility for any charges or expenses paid by the keeper of the facility for the emergency medical services.

"(2)     A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the keeper of the local correctional facility.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing the provider may bill the keeper of the local correctional facility who shall pay the account in accordance with ORS 169.140 and 169.150.

"(b)     A bill submitted to the keeper of the local correctional facility under this subsection must be accompanied by evidence documenting that:

"(A)     The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B)     The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed to the provider.

"(c)     If the provider receives payment from the individual or the insurer or health care contractor after receiving payment from the keeper of the facility, the provider shall repay the keeper the amount received from the keeper less any difference between payment received from the individual, insurer or contractor and the amount of the billing."

Accordingly, we conclude that there is no basis here for city's liability to hospital for the patient's medical costs. The trial court's granting of city's motion for summary judgment was proper, as was the denial of hospital's motion against city.

■■ We next examine the responsibility of county. Hospital contends that county is liable for the patient's medical costs, because he was in the custody of county during his hospital stay. ORS 169.140 provides:

> "The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and *necessary medical aid.*" (Emphasis supplied.)

ORS 169.150 provides:

> "The charges and expenses of safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall, unless otherwise provided by law, be paid out of the treasury of the county * * *."

Those statutes have been construed to impose liability on a county for medical expenses in circumstances when a person has not been in formal custody in a correctional facility. As explained in *Rogue Valley Memorial Hosp. v. Jackson Cty.*, 52 Or App 357, 364, 629 P2d 377, *rev den* 291 Or 368 (1981):

> "The county's responsibility does not depend upon the existence of formal physical custody in a correctional facility. *Mercy Hospital v. Douglas Co.*, [28 Or App 557, 559 P2d 1286 (1977)]. The statutes impose liability in those instances where *indicia* of custody are present, *i.e.*, where there is some basis to conclude that at the time of the prisoner's medical treatment, the prisoner's detention was sufficiently similar to actual county custody to require the county to bear the cost of their [*sic*] medical care."

Summarizing the case law addressing this issue, in *Bd of Higher Educ. v. Wash. Co.*, 52 Or App 369, 375, 629 P2d 373, *rev den* 291 Or 368 (1981), we said, in part:

> "* * * (2) a hospital is a place of confinement within the meaning of the statutes when the prisoner is physically

unable to be maintained in the county jail; (3) 'custody,' within the meaning of the statutes, exists whenever the prisoner is either placed under guard or where his physical condition makes it such that he could not leave the hospital of his own free will and, in either case, whenever the circumstances imply that the prisoner was so confined to assure his ultimate attendance at trial; and (4) that the statutes apply where the circumstances imply that the prisoner is in the sheriff's custody for one of the enumerated statutory purposes, notwithstanding the absence of indicia of 'formal custody.' "

*See Sisters of Charity v. Washington Co.*, 244 Or 499, 419 P2d 36 (1966); *Mercy Hospital v. Douglas Co., supra*, 28 Or App at 560.

County first contends that, since the adoption of ORS 169.165, that case law is no longer applicable. However, as established in *Salem Hospital v. Marion County, supra*, 307 Or at 222, no new or extended basis for county liability was intended by the enactment of ORS 169.165. That statute was adopted to ensure that prisoners and their insurance companies would be primarily responsible for the cost of medical treatment and that, before public agencies could be held responsible, reasonable efforts would be made to collect from the patient. Adoption of ORS 169.165 had no effect on the existing case law interpreting ORS 169.140 and ORS 169.150.

County also contends that it is not liable under ORS 169.140 and ORS 169.150, first, because the patient was not arrested or transported to its facilities until after the medical assistance had been provided and, second, because there were no county law enforcement personnel involved in the arrest or apprehension. However, we have held that it is not necessary that county personnel be involved before a person can be considered to be in the custody of a county:

"[T]he fact that the arrest of the prisoner and admission for medical treatment was effected by a peace officer not employed by the county, does not, in and of itself, alter the county's liability under the statutes[.]" *Bd of Higher Educ. v. Wash. Co., supra*, 52 Or App at 375.

Furthermore, we have not required that to be deemed to be in constructive custody of a county, a person must be arrested

before admission to the hospital or be in the county correctional facility before liability may be imposed under the statute. *Sisters of Charity v. Washington Co.*, *supra*, 244 Or at 502.

■ Whether a patient is in custody for purposes of ORS 169.140 and ORS 169.150 is a mixed question of law and fact. Here, the critical issue is whether the patient was "so confined to assure his ultimate attendance at trial." That conclusion may be made on the basis that the patient was guarded, on the physical condition of the patient or on the nature of the facility in which the patient is treated. *Sisters of Charity v. Washington Co.*, *supra*, 244 Or at 503; *Mercy Hospital v. Douglas Co.*, *supra*, 28 Or App at 560. The problem in this case is that the stipulated facts do not resolve this critical issue.

The parties stipulated that the patient was not guarded while at hospital. They also agreed that he was transported to hospital by helicopter and "was admitted for treatment of the various gunshot wounds (including gunshot wounds to both * * * upper arms, his chest, and right atrium) inflicted by [the officer]." However, there are insufficient facts concerning his condition for the trial court to have concluded as a matter of law whether he was in custody for purposes of ORS 169.140 and ORS 169.150 and that county was entitled to summary judgment. Resolution of that factual issue is necessary to determine whether the patient was in custody for the purposes of the statutes. We conclude that the trial court erred in granting summary judgment for county, because there remained a genuine issue of material fact.

■ County also argues that hospital failed to make reasonable efforts to collect from the patient or to document its efforts adequately, as required by ORS 169.165(3). The parties dispute whether the hospital made reasonable efforts to collect. Because whether the hospital's efforts were reasonable is a question of fact, the court also erred in deciding that issue by summary judgment.

■ Despite our conclusion that it is necessary to remand the case for further proceedings, we address the remaining issue because it will likely arise again on remand. Hospital contends that the trial court erred in denying its motions for

summary judgment on the issue of prejudgment interest. We have held that, in the absence of a statute or contract allowing it, prejudgment interest is not available on a claim against a public agency. *Harrington v. Board of Trustees*, 100 Or App 733, 737, 788 P2d 1019, *rev den* 310 Or 133 (1990); *Albany General Hospital v. Dalton*, 69 Or App 204, 684 P2d 34, *rev den* 298 Or 68 (1984). The statutes involved here do not authorize prejudgment interest, and there is no agreement that does. Hospital relies on *Gerber v. O'Donnell*, 81 Or App 262, 265, 724 P2d 916 (1986). That case, however, involved a partnership agreement that provided for payment of interest. There is no authority for an award of prejudgment interest here.

Judgment for city affirmed; judgment for county reversed and remanded.