Argued and submitted February 22, 1991, on appeal, summary judgment against city as to Hartse reversed and remanded and otherwise affirmed; summary judgment against county reversed and remanded; affirmed on cross-appeal January 8, reconsideration denied March 4, petition for review allowed April 24, 1992
(313 Or 209)

EMANUEL HOSPITAL,
*Respondent - Cross-Appellant,*

*v.*

MULTNOMAH COUNTY
and City of Portland,
*Appellants - Cross-Respondents.*

(A8810-05358; CA A63375)

823 P2d 1019

H. H. Lazenby, Jr., Assistant County Counsel, Portland, argued the cause for appellant - cross-respondent Multnomah County. With him on the briefs was Laurence Kressel, County Counsel for Multnomah County, Portland.

Thomas R. Williams, Senior Deputy City Attorney, Portland, argued the cause and filed the briefs for appellant - cross-respondent City of Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were Milo Petranovich, Vicki L. Smith, and Lane Powell Spears Lubersky, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Three patients, Chilson, Hartse and Seymour, were treated at Emanuel Hospital (hospital) after being involved in criminal activities. Hospital brought this action against City of Portland (city) and Multnomah County (county) to obtain payment for the medical care given them. The court granted hospital's motions for partial summary judgment, deciding that hospital had provided emergency medical services to the patients while they were in the custody of law enforcement officers, and denied city's and county's motions for summary judgment. It held city liable under ORS 30.795 and county liable under ORS 169.140 and ORS 169.150, subject to proof that hospital had made reasonable efforts to collect from the patients and that hospital had given sufficient notice to city and county of the claims against them. In a trial to the court on those two issues, the court held in favor of hospital and entered judgment jointly and severally against city and county for $26,758.14. Defendants now appeal. Hospital cross-appeals, arguing that the court erred when it granted defendants' motions to strike hospital's claim for prejudgment interest.

The facts of each case are:

*Chilson*: After responding to a report about a man fighting with his girlfriend, police officers shot Chilson in the shoulder, back, thigh and chest after he threatened them with a handgun. Police accompanied him to the hospital and continued to guard him for at least two of the six days he was confined there. The trial court found that

> "[he] was shot by Portland city police officers while committing criminal misconduct on or about February 20, 1987. Had he not been shot, he would have been impounded in the Multnomah County Jail.
>
> "Chilson was taken into physical custody by Portland city officers and transported to plaintiff's hospital where emergency medical services * * * were provided in the total reasonable amount of $10,212.12. On his release on February 26, 1987, Chilson was impounded in the Multnomah County Jail."

When he was released from the hospital, he was arrested on charges of kidnapping and menacing.

*Hartse*: On October 18, 1986, a Portland police officer followed an ambulance carrying this "suspect," who had been wounded in an altercation at a hotel. The officer kept him under observation at the hospital for approximately two hours, until a state trooper relieved him. The trial court found:

> "[Hartse was shot during an altercation at a hotel.] Had he not been shot, he would have been impounded in the Multnomah County Jail. Hartse was * * * transported to plaintiff's hospital where emergency medical services were provided in the total reasonable amount of $7,907.17. On his release from the hospital on October 20, 1986, Hartse was impounded in the Multnomah County Jail."[1]

He was held there to await arraignment and trial on charges relating to criminal conduct at the hotel.

*Seymour*: The Portland Fire Bureau responded to a call about "a man fallen down." They found Seymour, who, having damaged the door lock, found himself locked inside the apartment that he had just burglarized. When he tried to escape by the window, he fell several stories to the ground. Firemen transported him by ambulance to hospital. After an investigation at the scene, a police officer went to hospital. After Seymour had recovered enough to talk, the officer explained to him that he was under arrest and told him that "he was not going to get out until we transferred him to a jail ward." He was guarded for an unknown period of time. The court found:

> "[Seymour] was injured * * * while committing a felonious burglary on or about March 11, 1987, by falling from a tree during the commission of the burglary. After ambulance transfer to plaintiff's hospital, he was guarded by Portland city police officers and taken into their physical custody. And plaintiff rendered emergency medical services in the total reasonable amount of $8,638.85. On his release from another subsequent hospitalization not relevant to this case,

---

[1] The court initially stated that Hartse was shot by a Portland police officer. When counsel for the city objected, the court said:

"Excuse me. I misstated that he was shot by a Portland Police [sic], Hartse, and I agree with you that he was shot, I think, in some altercation at a motel. But the police guarded him at the hospital. Is there any dispute about that?"

Counsel for city answered: "No."

Seymour, sometime after March 12, 1987 was impounded in the Multnomah County Jail."

The court concluded that county and city are liable for the patients' medical expenses, on the basis of ORS 169.140, ORS 169.150, ORS 169.165 and ORS 30.795.

 County first contends it is not liable under ORS 169.140,[2] ORS 169.150[3] or ORS 169.165.[4] As discussed in

---

[2] ORS 169.140 provides:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and *necessary medical aid*." (Emphasis supplied.)

[3] ORS 169.150 provides:

"The charges and expenses of safekeeping and maintaining all persons duly committed to the local correctional facility of the county for trial, sentenced to imprisonment in the county local correctional facility, or committed for the nonpayment of any fine or for any contempt, shall, unless otherwise provided by law, be paid out of the treasury of the county * * *."

[4] ORS 169.165 provides:

"Notwithstanding ORS 169.140 and 169.150:

"(1) An individual who receives emergency medical services while in the custody of a local correctional facility is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor; and

"(b) To the keeper of the local correctional facility for any charges or expenses paid by the keeper of the facility for the emergency medical services.

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the keeper of the local correctional facility.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing the provider may bill the keeper of the local correctional facility who shall pay the account in accordance with ORS 169.140 and 169.150.

"(b) A bill submitted to the keeper of the local correctional facility under this subsection must be accompanied by evidence documenting that:

"(A) The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B) The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed to the provider.

"(c) If the provider receives payment from the individual or the insurer or health care contractor after receiving payment from the keeper of the facility, the provider shall repay the keeper the amount received from the keeper less any difference between payment received from the individual, insurer or contractor and the amount of the billing."

*Emanuel Hospital v. Umatilla County*, 110 Or App 206, 823 P2d 421 (1991), those statutes impose liability on a county when the patient is in the custody or constructive custody of the county. Whether a person is in custody is a mixed question of law and fact. To conclude that a person is in custody under ORS 169.140 and ORS 169.150, the court must find that the "circumstances imply that the prisoner was confined to assure his ultimate attendance at trial." *Emanuel Hospital v. Umatilla County, supra*, 110 Or App at 213. Although the facts reveal that in each of these cases the patients were guarded at some time during their hospital stays, the facts do not show when and how they were guarded or whether their physical conditions were such that they could not leave the hospital. Those determinations are necessary for the trial court to conclude as a matter of law whether the patients were in custody for purposes of ORS 169.140 and ORS 169.150 and to dispose of the case by summary judgment. The trial court erred in granting hospital's motion for summary judgment against county.

■ County also contends that the Oregon Tort Claims Act (OTCA) applies to this case and argues that the trial court erred in denying its motion for summary judgment on that basis. Even if the act applies to this case, the trial court found that city and county had actual notice within the 180 days required by ORS 30.275(2)(b). That determination is supported by the evidence.

County's final argument is that the court erred in finding that hospital made reasonable efforts to collect as required by ORS 169.165(3). Viewing the evidence in the light most favorable to hospital as the prevailing party, there was evidence to support the trial court's determination. *See Emanuel Hospital v. Umatilla County, supra*, 110 Or App at 213.

■ City assigns error only to the summary judgment against it insofar as it is based on Hartse's being in the custody of a Portland police officer when hospital provided medical services to him. For the reasons discussed in connection with county, we remand for a determination of whether Hartse was in custody. City does not seek review of the summary judgment insofar as it held it liable for the medical costs of Chilson and Seymour. Although we held in *Emanuel*

*Hospital v. Umatilla County, supra,* 110 Or App at 213, that ORS 30.795[5] does not impose independent liability on a city, city does not make that argument here. Therefore, we affirm the judgment against city relating to Chilson and Seymour.

For the reasons stated in the discussion of the judgment against county, we also affirm the trial court's determination that hospital made reasonable efforts to collect and that, assuming that OTCA is applicable, city had actual notice.

■ Hospital contends in its cross-appeal that it was entitled to its claim for prejudgment interest. Prejudgment interest may not be recovered. *Emanuel Hospital v. Umatilla County, supra,* 110 Or App at 214.

---

[5] ORS 30.795 provides:

"(1) An individual who receives emergency medical services while in the custody of a law enforcement officer is liable:

"(a) To the provider of the emergency medical services for the charges and expenses therefor; and

"(b) To the public agency by which the law enforcement officer is employed for any charges or expenses paid by the public agency for the emergency medical services.

"(2) A person providing emergency medical services to an individual described in paragraph (a) of subsection (1) of this section shall first make reasonable efforts to collect the charges and expenses thereof from the individual before seeking to collect them from the public agency.

"(3)(a) If the provider has not been paid within 45 days of the date of the billing, the provider may bill the public agency who shall pay the account.

"(b) A bill submitted to the public agency under this subsection must be accompanied by evidence documenting that:

"(A) The provider has billed the individual or the individual's insurer or health care contractor for the charges or expenses owed to the provider; and

"(B) The provider has made a reasonable effort to collect from the individual or the individual's insurer or health care contractor the charges and expenses owed to the provider.

"(c) If the provider receives payment from the individual or the insurer or health care contractor after receiving payment from the public agency, the provider shall repay the public agency the amount received from the public agency less any difference between payment received from the individual, insurer or contractor and the amount of the billing.

"(4) As used in this section:

"(a) 'Law enforcement officer' means an officer who is commissioned and employed by a public agency as a peace officer to enforce the criminal laws of this state or laws or ordinances of a public agency.

"(b) 'Public agency' means the state, a city, port, school district, mass transit district or county."

On appeal, summary judgment against city as to Hartse reversed and remanded; otherwise affirmed; summary judgment against county reversed and remanded; affirmed on cross-appeal.